*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AARON JOE BRYANT,

        Defendant-Appellant.

UNPUBLISHED
June 16, 2022

No. 358474
Berrien Circuit Court
LC No. 2020-003836-FH

Before: RONAYNE KRAUSE, P.J., and M. J. KELLY and YATES, JJ.

PER CURIAM.

Defendant, Aaron Bryant, pleaded guilty to one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a). The trial court sentenced him to serve 32 months to 15 years' imprisonment. He appeals by leave granted.[1] For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Bryant pleaded guilty to a single count of CSC-II in exchange for the prosecution's agreement that no additional charges arising from the same occurrence would be brought. Thereafter, Bryant admitted that, for the purpose of sexual gratification, he touched the "upper inner thigh right next to the genital area" of a child. At sentencing, Bryant's lawyer objected to the scoring of offense variable (OV) 4, but the trial court ultimately scored it at 10 points. Bryant, therefore, appeals by leave granted, challenging the scoring of OV 4.

---

[1] *People v Bryant*, unpublished order of the Court of Appeals, entered October 18, 2021 (Docket No. 358474).

## II. SENTENCE

### A. WAIVER

The prosecution argues that any error in the scoring of OV 4 was waived by Bryant's lawyer at the sentencing. "Waiver has been defined as the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). A challenge to the court's scoring decision is waived if the defendant's lawyer clearly expresses satisfaction with the trial court's decision. See *id*. at 219. Here, at sentencing, Bryant's lawyer objected to the scoring OV 4, arguing that there was no record evidence of any serious psychological injury to the victim. The prosecution, however, noted that a victim impact statement had been submitted over the weekend by the child's mother and that a copy had been recently e-mailed to Bryant's lawyer. On questioning from the court, the child's mother affirmed that, as a result of Bryant's conduct, her child had started therapy. The court inquired whether Bryant's lawyer still objected to the scoring of OV 4. Bryant's lawyer stated that he would defer to the court on the scoring of OV 4. Thereafter, the court scored OV 4 at 10 points. Although close, we conclude that deferring to the court on the scoring of OV 4 was not an expression of *clear satisfaction* with the court's decision. As a result, this issue is not waived.

### B. STANDARD OF REVIEW

We review for clear error a trial court's assignment of points for an OV. *People v Armstrong*, 305 Mich App 230, 242; 851 NW2d 856 (2014). "The trial court's findings are clearly erroneous if, after we have reviewed the entire record, we are definitely and firmly convinced it made a mistake." *Id*.

### C. ANALYSIS

"A trial court determines the sentencing variables by reference to the record, using the standard of preponderance of the evidence." *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). Michigan's rules of evidence do not apply at sentencing. MRE 1101(b)(3); *People v McFarlane*, 325 Mich App 507, 535; 926 NW2d 339 (2018). Therefore, a trial court can "properly rely on any and all record evidence in sentencing defendant . . . ." *McFarlane*, 325 Mich App at 535.

OV 4 addresses psychological injury to a victim. MCL 777.34. The court must assess 10 points if a "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The court is further instructed to score 10 points "if the serious psychological injury may require professional treatment," but "the fact that treatment has not been sought is not conclusive." MCL 777.34(2).

On appeal, Bryant contends that the only evidence in support of the court's scoring decision was speculation from the child's mother that her child suffered a serious psychological injury requiring treatment. He directs this Court to *People v White*, 501 Mich 160; 905 NW2d 228 (2017). In *White*, the trial court scored OV 4 at 10 points after finding that "any person who has been held at gunpoint has some psychological distress, and, clearly, in a situation where they believe their life may be ending." *Id*. at 163. The court reasoned that, although there was nothing indicating that the victim actually suffered psychological distress, there was "nothing to indicate that she was

fine, either." *Id.* The court believed that it was "reasonable to draw a conclusion that as a result of being held at gunpoint with a trigger being pulled, [the victim] suffered some type of psychological injury that might require some type of psychological counseling at some time in the—in the future." *Id.* Our Supreme Court concluded that the trial court erred by scoring OV 4. *Id.* at 164. The Court held that a court may not assess 10 points "on the sole basis of its conclusion that people would *typically* suffer a psychological injury when confronted with the instant crime." *Id.* at 163. Nor may the sentencing court assume that a reasonable person in the victim's situation would have suffered a serious physiological injury. *Id.*

Bryant argues *White* requires a score of zero points for OV 4. In doing so, he argues that the victim impact statement was made by the child's mother, that in her statement she delineated the history of how the child met Bryant and how he became welcomed in the family home, and that she also speculated as to the amount of damage Bryant's actions had caused her child. He also directs this Court to the following statements made by the trial court when imposing sentence:

> This is terrifying for the victim. This is a life-long nightmare for the victim and he's gonna spend the rest of his life dealing with this—okay?—and trying to turn things around so he feels stronger and better.

The above statements, however, were made *after* the court had already scored OV 4 at 10 points. When making its scoring decision, the court did not make any assumptions that a reasonable person in the child's situation would have suffered a serious psychological injury, nor did the court conclude that victims of CSC-II offenses would typically suffer a psychological injury. Instead, the court's decision was made after the child's mother affirmed that, within two weeks after Bryant abused him, the child was in therapy because of Bryant's sexual abuse of him. Evidence that a victim sought counseling may be considered in scoring OV 4. *People v Lampe*, 327 Mich App 104, 114; 933 NW2d 314 (2019). Here, because the court's scoring decision was based on evidence of an actual occurrence of a serious psychological injury requiring professional treatment, *White* does not mandate a score of zero points in this case.

Moreover, to the extent that Bryant finds error in the fact that the victim impact statement was improperly made by the child's mother, his argument is without merit. The child's mother was permitted to submit a victim impact statement under the Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq.* Under the CVRA, the "victim" of a crime may make an oral impact statement at sentencing. MCL 780.765. "Victim" is generally defined as "[a]n individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime. . . ." MCL 780.752(1)(m)(*i*). However, MCL 780.752(1)(m)(*iii*) further defines "victim" as "[a] parent, guardian, or custodian of the victim, if the victim is less than 18 years of age . . . ." Thus, the parent of a minor child may make an oral impact statement at sentencing. MCL 780.765. See also *People v Waclawski*, 286 Mich App 634, 692; 780 NW2d 321 (2009) (stating that "the law does not limit victim's impact statements to direct victims" and specifically stating that a trial court does not err by considering information presented by parents of victims). Accordingly, the court may consider the victim impact statement—even a statement prepared by a victim's parent—when imposing a sentence on the defendant.

Next, contrary to Bryant's argument on appeal, the child's mother did not speculate that her child had suffered a serious psychological injury. Instead, she began her statement by expressing the difficulty she had in briefly attempting to "summarize all of the devastating effects of criminal sexual conduct on an eight-year-old at the time, not to mention what lasting damage it will have and the unknowns in the future." She then detailed that after being sexually abused by Bryant her child went from adoring Bryant to "despising him and fearing him." She explained that prior to being a victim of sexual misconduct, her child was "witty, kind, empathetic, [and] loving." He was always her most affectionate child, always wanted cuddles, and was a "social butterfly with so much energy and positivity," who "always saw the good in everything." She then recounted that "a lot of these amazing attributes are gone or almost nonexistent" after Bryant's sexual abuse of him. In particular, she noted that he will not "cuddle any more" and that "he 'can't even be touched with any single—any type of way."

The child's mother added that the child could not sleep well and had "thoughts that someone like Mr. Bryant will come and hurt him and his family." She said that "he replays what happened over and over again." In particular, the night before sentencing, her child could not sleep and was "upset because he's so scared" that "Mr. Bryant will get out and try to kill him because of telling the truth." The child's mother further detailed that "one thing we have to do together" is to lock the doors and windows and check them multiple times. She noted that the child also has difficulty trusting men, that he had behavioral issues, including anger, and that his outlook on life is now negative. She described that he had expressed a wish that he was dead because of what happened to him. She said that it was "the most difficult thing in the world trying to explain to your child there's much more to life, and he deserves to live it—living it and enjoy it after something like that happens to him."

The child's mother also stated that his teacher had reached out multiple times because he was "very quiet and guarded in school." She recounted that he had told his therapist that the incident made him "angry, sad, and mad." He also told his therapist:

> I am worried about someone or Mr. Bryant coming into my home and hurting my family. I can't sleep because I have bad thoughts and dreams. I ask to make sure the doors are locked. Whenever I'm at school I keep constantly thinking about what happened and it makes me want to go home. I get more scared when I'm alone.

The child's mother opined that Bryant's actions "caused immense trauma" to her child and that it would most likely "be long-lasting."

Viewing the victim impact statement by the child's mother as a whole, it is clear that she was not merely recounting hypothetical psychological harm to her child arising solely from the nature of the offense, nor was she merely speculating that he would be harmed in the future. Instead, she described the actual affect that Bryant's actions had on her child. As detailed above, her observations indicate that he had difficulty sleeping, that he is angry and sad, that he is afraid, that his ability to trust men had been diminished, that he had expressed a wish to die as a result of what Bryant did, that he is paranoid of being harmed again, and that he fears being alone. Moreover, because of Bryant's actions, at the time of sentencing, the child was in therapy.

Although the court made its decision to score OV 4 only on the basis that the child was in therapy as a result of Bryant's sexual abuse of him, our review of the court's scoring of OV 4 is not limited to the reasoning provided by the trial court. *White*, 501 Mich at 164. Thus, notwithstanding that the court did not rely on the balance of the victim impact statement made by the child's mother, when considering the record as a whole, we conclude that the trial court did not clearly err by scoring OV 4 at 10 points. See *Armstrong*, 305 Mich App at 247 (holding that a trial court may assess 10 points for OV 4 "if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated.").[2]

Affirmed.

/s/ Amy Ronayne Krause
/s/ Michael J. Kelly
/s/ Christopher P. Yates

---

[2] Bryant suggests that the court's scoring decision was improper because although "the plea agreement contained a provision that Defendant would not be charged with any other crimes relating to the activity which forms the basis of this offense," "the court's basis for the sentence encompasses many unspecified acts that are not the act on which the plea was based." Yet, at the plea hearing, Bryant expressly agreed that there was no agreement as to sentencing. Further, the plea agreement was that no additional charges would be brought, not that the conduct forming the basis for the potential additional charges could never be considered.