*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 9, 2023

Plaintiff-Appellee,

v

No. 360776; 360777
Kent Circuit Court

KHALIQUE ALLON BREWER,

LC No. 15-000240-FC;
15-000267-FC

Defendant-Appellant.

Before: GLEICHER, C.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

In these consolidated appeals,[1] in Docket No. 360777, defendant Khalique Allon Brewer appeals by leave granted[2] his guilty-plea convictions of armed robbery and first-degree home invasion. And in Docket No. 360776, defendant appeals by leave granted[3] his guilty-plea convictions of unlawful imprisonment, assault with intent to do great bodily harm less than murder, and possession of a firearm during the commission of a felony. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In December 2014, defendant, Terrence Fields, and Otis Mack[4] drove to the residence of Donald and Kathy Roelofs in order to carry out a planned robbery. Mack knocked on the door and stated that his name was "Josh." Kathy believed that she recognized the name "Josh" and

---

[1] *People v Brewer*, unpublished order of the Court of Appeals, entered September 7, 2022 (Docket Nos. 360776 and 360777).

[2] *People v Brewer*, unpublished order of the Court of Appeals, entered April 28, 2022 (Docket No. 360777).

[3] People v Brewer, unpublished order of the Court of Appeals, entered April 28, 2022 (Docket No. 360776).

[4] Terrence Fields and Otis Mack were codefendants in both cases.

instructed Christopher Scott Robert Derby to answer the door. Once inside the residence, Fields, Mack, and defendant demanded that Donald, Kathy, and Derby get on the ground. Mack, with a gun out, followed Derby into the kitchen and demanded money and marijuana. Derby grabbed Mack's gun and a struggle ensued, which resulted in Derby getting shot in the neck. After stealing marijuana and an electronic tablet, the three fled the scene. When law enforcement arrived, Derby was on the floor, motionless, and he could not feel his legs or arms. At the hospital, an x-ray showed that the bullet entered Derby's neck and was lodged near his trachea.

In February 2015, in lower court case no. 15-000267-FC, defendant entered a plea of guilty to armed robbery and first-degree home invasion. In March 2015, at his sentencing, defendant stated that his only objection to his presentence investigation report (PSIR) and sentence information reports was the calculation of his jail credit, which the trial court corrected. Defendant did not object to the scoring of his prior record variables (PRVs) or offense variables (OVs). For armed robbery, the trial court assessed, in relevant part, 50 points for PRV 1, zero points for PRV 3, 25 points for OV 1, and 25 points for OV 3. The trial court calculated defendant's total PRV score at 70 points, which was PRV Level E, and total OV score at 100 points, which was OV Level VI. Accordingly, for the crime of armed robbery, the minimum sentencing guidelines range was 225 months to 375 months or life. MCL 777.62. The trial court sentenced defendant to 25 to 75 year's imprisonment for armed robbery, which was the middle of the guidelines.

In September 2015, after the trial court appointed defendant appellate counsel, defendant moved to correct his sentence under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). In December 2015, the trial court heard defendant's motion for a resentencing and ordered an evidentiary hearing to determine whether the evidence supported the court's scoring under the guidelines, but no hearing was ever scheduled or conducted. In August 2021, the trial court appointed defendant new appellate counsel. In September 2021, defendant again moved for a resentencing, contending that the trial court erroneously scored his sentencing variables and that his defense counsel provided ineffective assistance of counsel by failing to provide mitigation evidence at sentencing. In January 2022, the trial court heard defendant's motion for a resentencing and concluded that defendant was sentenced under was the correct sentencing grid and that his trial counsel was not ineffective. These consolidated appeals followed.

## II. SENTENCING VARIABLES

### A. STANDARD OF REVIEW

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The trial court's factual findings are clearly erroneous only if this Court is left with a define and firm conviction that a mistake has been made. *People v Armstrong*, 305 Mich App 230, 242; 851 NW2d 856 (2014). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438. "If a minimum sentence is within the appropriate guidelines sentence range, [this Court] shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." MCL 769.34(10).

## B. ANALYSIS

In Docket No. 360776, defendant challenges his sentence on the basis that the trial court erroneously scored PRV 1 (prior high severity felony convictions), and in Docket No. 360777, defendant challenges the scoring of that offense variable as well as OV 1 (aggravated use of weapon), and OV 3 (physical injury to victim). We disagree with defendant's arguments and affirm defendant's sentences.

"Under the statutory sentencing guidelines, the trial court must score the applicable offense and prior record variables to determine the appropriate range for the minimum sentence." *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). "A trial court determines the sentencing variables by reference to the record, using the standard of preponderance of the evidence." *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). When scoring variables, the trial court may rely on reasonable inferences from the record. *People v Montague*, 338 Mich App 29, 55; 979 NW2d 406 (2021). "[The] sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (quotation marks and citation omitted). The trial court may also consider a victim-impact statement. See *Montague*, 338 Mich App at 55. The trial court may draw inferences regarding a defendant's behavior from objective evidence when sentencing the defendant. *People v Petri*, 279 Mich App 407, 422; 760 NW2d 882 (2008).

Defendant argues that the trial court erroneously assessed 50 points for PRV 1, which concerns previous felony convictions, because he was charged as a juvenile in juvenile court and received a juvenile sentence. Thus, defendant contends his two previous felonies are not adult convictions, but juvenile adjudications.

A "designated" case concerns a juvenile who is tried as an adult following the prosecuting attorney's designation of or request to the court to designate the juvenile as an adult. MCL 712A.2d. "The clear import of MCL 712A.2d is that a juvenile tried as an adult receives a *conviction*. In contrast, juveniles who proceed as juveniles are *adjudicated responsible*." *Armstrong*, 305 Mich App at 244 (emphasis in original). Although defendant was tried in the circuit court, he was tried as a designated juvenile—an adult—for armed robbery and first-degree home invasion, which he pleaded guilty to. When defendant pleaded guilty, he received two *convictions*. See *id*. Exercising its sentencing discretion, the sentencing court issued a blended sentence, a delayed adult sentence pending defendant's performance under the terms provided by a juvenile disposition. See *People v Petty*, 469 Mich 108, 113; 665 NW2d 443(2003). However, the issuance of a blended, or delayed, sentence does not alter the fact that defendant received a *conviction*, and not an *adjudication*. See *Armstrong*, 305 Mich App at 245 ("[T]he previous trial court's decision regarding Armstrong's [blended] sentence did not alter the fact that he received a conviction.").

Defendant's previous convictions for armed robbery and first-degree home invasion from 2013 were the previous high-severity felonies the trial court relied on to assess 50 points for PRV 1. See MCL 777.51(1)(b) (50 points are assessed if the "offender has 2 prior high severity felony convictions"). Those convictions carried with them the same liabilities as any other adult

-3-

conviction. MCL 712A.2d(7) (stating that when a juvenile is tried as an adult, "[t]he conviction must have the same effect and liabilities as if it had been obtained in a court of general criminal jurisdiction"). Thus, contrary to defendant's argument, the trial court properly considered defendant's previous convictions for armed robbery and first-degree home invasion as previous high-severity felony convictions, and the trial court did not clearly err by assessing 50 points for PRV 1.

Defendant also argues that the trial court erroneously assessed 25 points for OV 1 because the prosecutor did not show by a preponderance of evidence that defendant's use of a weapon was aggravated. "Offense variable 1 [assesses the] aggravated use of a weapon." MCL 777.31(1). Under OV 1, 25 points are properly assessed when "[a] firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon." MCL 777.31(1)(a). Further, "[i]n multiple offender cases, if 1 offender is assessed points for the presence or use of a weapon, all offenders shall be assessed the same number of points." MCL 777.31(2)(b).

The crimes committed by defendant involved multiple offenders. At his plea hearing, defendant testified that he did not possess a gun. Instead, defendant stated he knew that either Fields or Mack possessed a gun with the intention to commit armed robbery, and he participated in the plan with the intent to commit armed robbery. Inside the residence, Mack used a gun and demanded money and marijuana from the victims, one of whom—Derby—was shot in the neck after a struggle. Though the evidence demonstrated that defendant did not possess a weapon during the armed robbery and despite the fact that neither Fields or Mack were convicted of armed robbery or scored for OV 1 at the time of defendant's sentencing, the trial court did not err by assessing 25 points for OV 1. The sentencing guidelines do not require that the other offenders in MCL 777.31(2)(b) be identified, charged, and convicted before any other offenders may be assessed points under OV 1. That defendant was the first offender identified, charged, and convicted of the armed robbery is, therefore, irrelevant for the purposes of scoring OV 1. Between defendant's testimony and the PSIR, there was a preponderance of evidence to find that Mack discharged a firearm at a human being in the course of the armed robbery. OV 1 requires all offenders who participated in the crime to receive the same score, without regard to whether the offenders were prosecuted or convicted. The trial court properly determined that a firearm was discharged at a human being in a multiple offender case. Thus, contrary to defendant's argument, the trial court did not clearly err by assessing 25 points for OV 1.

Lastly, defendant argues that the trial court erroneously assessed 25 points for OV 3 because the PSIR did not demonstrate by a preponderance of evidence that a life threatening or permanent incapacitating injury occurred to a victim. "Offense variable 3 [assesses the] physical injury to a victim." MCL 777.33(1). Under OV 3, 25 points are properly assessed when a "[l]ife threatening or permanent incapacitating injury occurred to a victim[.]" MCL 777.33(1)(c). In assessing points for OV 3, the focus is not on the defendant's actions, or on whether the defendant's actions placed a victim in a life-threatening situation; rather, the question is whether the victim's injuries were life-threatening. *People v Chaney*, 327 Mich App 586, 590; 935 NW2d 66 (2019).

Defendant contests whether Derby's injuries were life threatening or permanent. At his plea hearing, defendant did not admit to the occurrence of any injury. There were no medical records nor a victim-impact statement introduced at sentencing to establish that a life threatening

or permanent injury occurred. The only record evidence, defendant admits, that even remotely pertains to the victim's injuries is the PSIR. Defendant contends, however, the PSIR alone does not show by a preponderance of the evidence that a life threatening or permanent incapacitating injury occurred to Derby.

We recognize that a victim-impact statement, testimony from a medical professional, or medical records were never introduced or admitted at defendant's plea hearing or sentencing. Although these documents may have easily established whether Derby sustained a life threatening or permanent incapacitating injury, the PSIR provided sufficient evidence to establish such injury. And while the PSIR did not provide any information on what medical treatment Derby underwent or how he recovered, the trial court was entitled to draw reasonable inferences about the victim's recovery from the record. By the time law enforcement found Derby after he was shot in the neck, he was laying on the floor, motionless, without the ability to feel his arms or legs. Derby was transported to a hospital, where an x-ray revealed that the bullet entered his neck and lodged itself near his trachea. From this evidence, the trial court was permitted to infer that the bullet's location caused paralysis, a life threatening or permanently incapacitating injury. Thus, contrary to defendant's argument, the trial court did not clearly err when it assessed 25 points for OV 3.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARD OF REVIEW

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). The trial court's factual findings are reviewed for clear error, while the constitutional determination of whether the defendant's right to counsel was violated, is reviewed de novo. *People v Rosa*, 322 Mich App 726, 741 n 8; 913 NW2d 392 (2018). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *Armstrong*, 305 Mich App at 242. "This Court reviews an unpreserved ineffective-assistance-of-counsel claim for errors apparent on the record." *People v Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019) (quotation marks and citations omitted).

### B. ANALYSIS

Defendant contends that defense counsel was ineffective for failing to provide mitigating evidence at his sentencing. Specifically, defendant suggests his attorney should have provided evidence about the developmental science of juveniles and should have introduced the lower sentences defendant's older codefendants received. We disagree that defendant received the ineffective assistance of counsel.

The right to counsel guaranteed by the United States Constitution, US Const, Am VI, and Michigan Constitution, Const 1963, art 1, § 20, includes the right to effective assistance of counsel. *People v Meissner*, 294 Mich App 438, 459; 812 NW2d 37 (2011). To prevail on an ineffective assistance of counsel claim, a defendant must show that

 (1) the lawyer's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for the lawyer's deficient performance, the result of the proceedings would have

-5-

been different.  [*People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018).]

The relevant inquiry "is not whether a defendant's case might conceivably have been advanced by alternate means, but whether defense counsel's errors were so serious that they deprived the defendant of a fair trial." *Meissner*, 294 Mich App at 459 (quotation marks and citation omitted).  In addition, "[e]ffective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).  Counsel's performance must be measured against an objective standard of reasonableness, *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009), and without benefit of hindsight. *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995).

Moreover, "trial courts are not required to expressly or explicitly consider mitigating factors at sentencing."  *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019). Consequently, because the trial court was not required to consider the mitigating factors defendant suggests were important at sentencing, it was not objectively unreasonable for defense counsel to not introduce such evidence to the trial court.  In addition, the mitigating evidence of defendant's older codefendants' lower sentences was unavailable at the time of defendant's sentencing.  Both codefendants were sentenced after defendant; thus, defense counsel could not have brought this information to the court's attention at sentencing.  And, contrary to defendant's suggestion, the trial court was already aware of defendant's age at sentencing.  The first page of the Sentencing Information Report contained defendant's birthdate.  At defendant's plea hearing, the trial court discovered that defendant was in the eleventh grade and, at defendant's sentencing, the trial court remarked that defendant was a young man.  Although the trial court never specified that defendant was *16 years old* at the time of the offense, it is clear the court was aware of defendant's age.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica