PEOPLE v ARMSTRONG

Docket No. 312301. Submitted May 6, 2014, at Lansing. Decided May 13, 2014, at 9:10 a.m.

Parys A. Armstrong was convicted by a jury in the Calhoun Circuit Court, Conrad J. Sindt, J., of third-degree criminal sexual conduct. He was sentenced to 10 to 15 years' imprisonment. The Court of Appeals granted defendant's application for leave to appeal.

The Court of Appeals *held*:

1. The trial court did not clearly err by holding that the prosecutor's use of a peremptory challenge to remove a prospective juror was not based on the juror's race. The trial court properly found that the facts did not establish discrimination as a matter of law. No violation of the Equal Protection Clause of the Fourteenth Amendment occurred.

2. A rational view of the evidence supports the trial court's decision to issue a flight instruction to the jury.

3. The trial court did not abuse its discretion when it denied defendant's motion for a new trial based on alleged newly discovered evidence on the basis that defense counsel had not been reasonably diligent in attempting to secure the evidence.

4. The trial court properly scored Prior Record Variable (PRV) 1, MCL 777.51, which concerns previous high-severity felony convictions, instead of PRV 3, MCL 777.53, which concerns previous high-severity juvenile adjudications, with regard to a previous court action in which defendant had been tried as an adult, convicted, and then sentenced as a juvenile. The prior court's decision regarding defendant's sentence did not alter the fact that he received a conviction, not a juvenile adjudication. Pursuant to MCL 712A.2d(7), defendant's prior conviction has the same liabilities as any other adult conviction.

5. There was no evidence that the complainant received or required medical treatment. The trial court improperly assessed 10 points under Offense Variable (OV) 3, MCL 777.33, because the preponderance of the evidence did not support the trial court's determination that the complainant required medical treatment.

Defendant is entitled to resentencing because correcting the error results in a different sentencing guidelines range.

6. The complainant's statements about the way the sexual assault affected her life showed that she suffered a psychological injury and may require treatment in the future. The trial court did not clearly err when it determined that the complainant suffered a serious psychological injury requiring professional treatment. The trial court did not err by assessing 10 points under OV 4, MCL 777.34.

Conviction affirmed, sentence vacated, and remanded for resentencing.

1. CONSTITUTIONAL LAW — EQUAL PROTECTION — TRIAL — PEREMPTORY CHALLENGES.

A prosecutor's use of a peremptory challenge to remove a prospective juror solely because of the juror's race violates the Equal Protection Clause of the Fourteenth Amendment.

2. CONSTITUTIONAL LAW — EQUAL PROTECTION — TRIAL — PEREMPTORY CHALLENGES.

A trial court employs a three-step process to determine whether a defendant has shown impermissible racial discrimination resulting from a prosecutor's use of a peremptory challenge to remove a prospective juror: first, the defendant must show a prima facie case of discrimination, second, the prosecutor may rebut the defendant's prima facie case with a race-neutral reason for dismissing the juror, and, third, the trial court must determine whether the prosecutor's explanation is a pretext for discrimination.

3. CRIMINAL LAW — CONSTITUTIONAL LAW — TRIAL — PEREMPTORY CHALLENGES.

A defendant, in order to establish a prima facie case of discrimination based on race in the exercise of a peremptory challenge, must show, first, that he or she is a member of a cognizable racial group, second, that the proponent has exercised a peremptory challenge to exclude a member of a certain racial group from the jury pool, and, third, that all relevant circumstances raise an inference that the proponent of the challenge excluded the prospective juror on the basis of race; the defendant must offer facts that at least give rise to the inference that the prosecutor had a discriminatory purpose for excluding the prospective juror.

4. CRIMINAL LAW — EVIDENCE — NEW TRIAL — NEWLY DISCOVERED EVIDENCE.

A defendant seeking a new trial on the basis of newly discovered evidence must show that the evidence itself, not merely its

materiality, was newly discovered, the newly discovered evidence was not cumulative, the defendant could not, using reasonable diligence, have discovered and produced the evidence at trial, and that the new evidence makes a different result probable on retrial; newly discovered impeachment evidence may be grounds for a new trial if, as well as meeting these criteria, there is an exculpatory connection on a material matter between a witness's testimony at trial and the new evidence.

5. CRIMINAL LAW — SENTENCING — PRIOR RECORD VARIABLES — JUVENILES.

A juvenile tried as an adult and who is found guilty or who pleads no contest receives a judgment of conviction having the same effect and liabilities as any other adult conviction; a subsequent trial court properly employs Prior Record Variable (PRV) 1, pertaining to prior felony convictions, in determining the defendant's sentence instead of PRV 3, pertaining to prior juvenile adjudications, where the prior trial court tried the juvenile as an adult but sentenced the juvenile as a juvenile (MCL 712A.2d).

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *David E. Gilbert*, Prosecuting Attorney, and *Marc Crotteau*, Assistant Prosecuting Attorney, for the people.

*Daniel D. Bremer* for defendant.

Before: FITZGERALD, P.J., and SAAD and WHITBECK, JJ.

PER CURIAM. Defendant, Parys Antwon Armstrong, appeals by leave granted his conviction, following a jury trial, of third-degree criminal sexual conduct (CSC III)[1] and his sentence of 10 to 15 years' imprisonment. We affirm Armstrong's conviction. But because the trial court improperly scored Offense Variable (OV) 3,[2] we vacate Armstrong's sentence and remand for resentencing.

---

[1] MCL 750.520d(1)(a) (sexual penetration, complainant at least 13 years of age and under 16 years of age).

[2] MCL 777.33.

## I. FACTS

### A. THE ASSAULT

According to the complainant, on June 27, 2011, she visited a park with her friends between 4:00 and 5:00 p.m. She was 14 years old at the time. The complainant testified that when her friends left, she remained in the park to speak with a boy. After a couple of hours, the boy told her that he would return shortly and left.

After she waited about 15 minutes, Armstrong approached her and began talking to her. She did not know him, and he told her that he had been kicked out of his house. She went with him to the other side of the park, where Armstrong told her that he liked her and tried to kiss her. She turned away and told Armstrong that she had a boyfriend. While she had her back to Armstrong, he reached around and touched her undershorts, twice putting his finger in her vagina.

The complainant testified that she was frightened and in shock. She told Armstrong to stop and that she had to go meet a friend. Armstrong asked where she lived and gave her his phone number, which she recorded in her phone. The complainant testified that she left the park at about 7:00 or 8:00 p.m. While walking home, she called a friend and told him that she thought that she had been molested. The friend told her to call the police.

According to the complainant's mother, the complainant was frightened and crying when she got home. The complainant testified that she did not tell her mother what had happened because she was afraid that her mother would "flip out," and that her father would hurt Armstrong and get in trouble. The complainant called her sister. The complainant's sister testified that the complainant was "a little hysterical," confused, and

crying, and the complainant stated that she may have been molested. According to the complainant, she told her mother what happened after her sister told her to do so, and described Armstrong to her parents.

The complainant's father testified that he began calling friends and went to the park to look for Armstrong. Dustin Wade, a friend of the complainant's father, testified that he found Armstrong in the park and followed Armstrong until the complainant's father arrived. According to the complainant's father, he asked Armstrong if he had touched the complainant and told him to stay where he was until the police arrived. Armstrong became angry and tried to punch the father. Wade grabbed Armstrong around the neck and wrestled him to the ground. People who lived across the street thought that the complainant's father and Wade were attacking Armstrong, came over, and ordered Wade to let Armstrong get up. The father told Wade to let Armstrong up. The police were just rounding the corner, and Armstrong ran away.

### B. JURY SELECTION

During jury selection, the trial court asked the jurors if any of them had personal issues that would interfere with their ability to pay attention to the case. Juror Two responded that he had three children, ages two, three, and five, and that he had to pick one of his children up at school at 3:30 p.m. Juror Two stated that his wife worked from 3:30 to 11:30 p.m., they were new to the area and did not have a babysitter, and his wife would have to take the day off if the trial went past 3:30 p.m.

The prosecutor used a peremptory challenge to excuse Juror Two. The trial court briefly removed the jury from the courtroom before it was sworn in so that defense counsel could place an objection on the record. Defense

counsel contended that the prosecutor had inappropri-
ately excused Juror Two because Armstrong is black and
Juror Two was the only black juror in the jury pool. The
prosecutor responded that Juror Two was a stay-at-home
parent who was new to the community and who had
issues concerning his availability to provide childcare.

The trial court reasoned that the prosecutor's use of
a single peremptory challenge did not show a pattern of
discrimination and that Juror Two, who was respon-
sible to care for his young children, had concerns about
childcare. The trial court found that the prosecutor did
not excuse Juror Two for the purpose of racial discrimi-
nation.

The jury ultimately found Armstrong guilty of one
count of CSC III.

### C. SENTENCING

At the sentencing hearing, defense counsel chal-
lenged the use of Prior Record Variable (PRV) 1,[3] which
concerns previous felony convictions. Defense counsel
asserted that the trial court should use PRV 3,[4] which
concerns previous juvenile adjudications, instead of
PRV 1 because, though a previous court had tried
Armstrong as an adult, it had sentenced him as a
juvenile. The trial court concluded that it should score
PRV 1 because the previous court had tried Armstrong
as an adult.

Defense counsel then challenged the scoring of OV 3,
which concerns physical injury. Defense counsel asserted
that the trial court should not assess 10 points for OV 3
because the complainant did not suffer an injury or
receive medical treatment. The prosecutor responded that

[3] MCL 777.51.

[4] MCL 777.53.

the SANE (sexual assault nurse examiner) report, following the complainant's examination, indicated that her hymen was reddened and tender. Relying on the SANE report, the trial court assessed Armstrong 10 points under OV 3.

Defense counsel also challenged the scoring of OV 4,[5] which concerns psychological injury. Defense counsel asserted that the complainant's injury did not require medical treatment because she did not receive counseling. In the complainant's impact statement, the complainant detailed her emotional difficulties following the assault, but stated that she did not want counseling. The complainant's father stated at the hearing that the complainant would receive counseling when she was ready for it. The trial court concluded that the complainant's statements that she did not want counseling did not mean that she would not need counseling, and it assessed Armstrong 10 points under OV 4.

### D. ARMSTRONG'S MOTION FOR A NEW TRIAL

Before sentencing, Armstrong filed a motion for a new trial on the basis of newly discovered evidence. Following the sentencing hearing, Armstrong attached three affidavits to his supplemental motion for a new trial. The affiants stated that the complainant had a poor reputation for truthfulness and provided potential impeachment material.

Defense counsel indicated in his motion that he had searched for these witnesses on Facebook on December 7, 2011, the day before trial began, but he was not able to obtain their proposed testimony until after the trial. The trial court found that Armstrong did not show that he could not have discovered the evidence by using

---

[5] MCL 777.34.

reasonable diligence before trial. The trial court noted that defense counsel should not have waited until the night before trial to attempt to discover witnesses. Alternatively, the trial court concluded that newly discovered impeachment evidence cannot support a motion for a new trial.

## II. JUROR DISMISSAL

### A. STANDARD OF REVIEW

A defendant's preserved challenge to the prosecutor's use of a peremptory challenge on the basis that it violated the Equal Protection Clause is a mixed question of fact and law.[6] When reviewing whether a defendant has shown a prima facie case of discrimination, we review for clear error the trial court's findings of fact and review de novo whether those facts constitute discrimination as a matter of law.[7] The trial court's findings are clearly erroneous if, after we have reviewed the entire record, we are definitely and firmly convinced that it made a mistake.[8]

### B. LEGAL STANDARDS

A prosecutor violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution when he or she uses a peremptory challenge to remove a prospective juror solely because of the juror's race.[9] The trial court uses a three-step process to determine whether the defendant has shown impermis-

---

[6] *People v Knight*, 473 Mich 324, 342; 701 NW2d 715 (2005).

[7] *Id.*

[8] *People v Coomer*, 245 Mich App 206, 219; 627 NW2d 612 (2001).

[9] *Batson v Kentucky*, 476 US 79, 89; 106 S Ct 1712; 90 L Ed 2d 69 (1986); *Knight*, 473 Mich at 335.

sible discrimination.[10] First, the defendant must show a prima facie case of discrimination.[11] Second, the prosecutor may rebut the defendant's prima facie case with a race-neutral reason for dismissing the juror.[12] Third, the trial court must determine whether the prosecutor's explanation is a pretext for discrimination.[13]

### C. APPLYING THE STANDARDS

Armstrong contends that the trial court erred when it concluded that he did not establish a prima facie case of discriminatory purpose. We disagree.

A defendant must show three things to establish a prima facie case of discrimination based on race:

> (1) he [or she] is a member of a cognizable racial group; (2) the proponent has exercised a peremptory challenge to exclude a member of a certain racial group from the jury pool; and (3) all the relevant circumstances raise an inference that the proponent of the challenge excluded the prospective juror on the basis of race.[14]

The defendant must offer facts that *at least* give rise to an inference that the prosecutor had a discriminatory purpose for excluding the prospective juror.[15]

In this case, Armstrong established the first two elements of a prima facie case of discrimination. However, the trial court concluded that he did not establish the third element. The trial court found that the prosecutor had only used a single peremptory challenge and that

---

[10] *Knight*, 473 Mich at 336.

[11] *Batson*, 476 US at 96; *Knight*, 473 Mich at 336.

[12] *Batson*, 476 US at 97; *Knight*, 473 Mich at 337.

[13] *Batson*, 476 US at 98; *Knight*, 473 Mich at 337-338.

[14] *Knight*, 473 Mich at 336.

[15] *Johnson v California*, 545 US 162, 168; 125 S Ct 2410; 162 L Ed 2d 129 (2005); *Knight*, 473 Mich at 336-337.

Juror Two had childcare issues. We conclude that the trial court's finding was not clearly erroneous because Juror Two detailed his childcare issues on the record.

We also conclude that the trial court properly found that the facts did not establish discrimination as a matter of law. Juror Two was the only black juror in the jury pool, but Juror Two also had childcare issues. The prosecutor did not engage in a pattern of discrimination. The prosecutor did not excuse any other prospective jurors, but no other prospective jurors expressed similar issues. Given the facts, the circumstances did not lead to the inference that the prosecutor dismissed Juror Two because of his race.

### III. JURY INSTRUCTIONS

#### A. STANDARD OF REVIEW

When reviewing a claim of instructional error, this Court views the instructions as a whole to determine whether the issues to be tried were adequately presented to the jury.[16] This Court reviews for an abuse of discretion the trial court's decision regarding the applicability of a jury instruction to the facts of a specific case.[17] The trial court abuses its discretion when its outcome falls outside the range of principled outcomes.[18]

#### B. LEGAL STANDARDS

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him."[19]

---

[16] *People v Martin,* 271 Mich App 280, 337-338; 721 NW2d 815 (2006).

[17] *People v McKinney,* 258 Mich App 157, 163; 670 NW2d 254 (2003).

[18] *People v Babcock,* 469 Mich 247, 269; 666 NW2d 231 (2003).

[19] *People v Riddle,* 467 Mich 116, 124; 649 NW2d 30 (2002); MCL 768.29.

The jury instructions "must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them."[20] The trial court may issue an instruction to the jury if a rational view of the evidence supports the instruction.[21]

### C. APPLYING THE STANDARDS

Armstrong contends that the trial court erred when it issued an instruction on flight because the evidence did not support the instruction. We disagree.

As part of its instructions, the trial court issued a flight instruction to the jury:

> There's been evidence presented by the prosecution which he claims shows the defendant ran away after the alleged crime at the time that he was being confronted about it. This evidence does not prove guilt. A person may run or hide for perfectly innocent reasons, panic, mistake, or fear, for example. However, a person may also do so because of a certain consciousness of guilt. You must decide whether you accept the evidence of flight as true. Then decide if true whether it shows that the defendant did have a consciousness of guilt. Those are all decisions for you to make.

The complainant's father testified that Armstrong ran away as the police were approaching. Thus, a rational view of the evidence supported the flight instruction. The instruction also fairly encompassed a theory of the case because one of the prosecutor's theories was that Armstrong's decision to flee showed his consciousness of guilt. We conclude that the trial court's decision to issue this instruction did not fall outside the range of principled outcomes.

---

[20] *People v Reed*, 393 Mich 342, 349-350; 224 NW2d 867 (1975) (citations omitted).

[21] MCL 768.29; *Riddle*, 467 Mich at 124.

## IV. NEWLY DISCOVERED EVIDENCE

### A. STANDARD OF REVIEW

"We review for an abuse of discretion a trial court's decision to grant or deny a motion for new trial."[22]

### B. LEGAL STANDARDS

A trial court may grant a defendant a new trial on the basis of newly discovered evidence, but this does not negate the parties' responsibility to "use care, diligence, and vigilance in securing and presenting evidence."[23] The defendant must show the trial court that

> (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial.[24]

Newly discovered impeachment evidence may be grounds for a new trial if, as well as meeting these criteria, there is an exculpatory connection on a material matter between a witness's testimony at trial and the new evidence.[25]

### C. APPLYING THE STANDARDS

Armstrong contends that the trial court abused its discretion when it denied his motion for a new trial based on newly discovered evidence because his attorney was reasonably diligent in trying to secure the evidence before trial. We disagree.

---

[22] *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012).

[23] *Id.* (quotation marks and citations omitted).

[24] *Id.* at 313 (quotation marks and citations omitted); MCR 6.508(D).

[25] *Grissom*, 492 Mich at 319.

The record, including defense counsel's statements in his motions in the trial court, indicates that defense counsel waited until the evening before trial to search for the newly discovered impeachment witnesses. At that time, defense counsel had been Armstrong's appointed counsel since June 30, 2011. The three witnesses responded to defense counsel within 11 weeks of his first contact. Thus, the record indicates that had defense counsel more actively attempted to secure impeachment witnesses, he could have discovered the witnesses in time for Armstrong's December 8, 2011 trial. We conclude that the trial court did not abuse its discretion when it denied Armstrong's motion for a new trial because defense counsel was not reasonably diligent in attempting to secure his newly discovered impeachment witnesses.

Armstrong also contends that the trial court erred when it held that newly discovered impeachment evidence cannot support a motion for a new trial. Because we conclude that the trial court was correct when it determined that Armstrong's attorney did not act with reasonable diligence, we decline to review the trial court's alternative holding.

V. SENTENCING GUIDELINES

A. STANDARD OF REVIEW

This Court reviews the sentencing court's scoring of a sentencing guidelines variable for clear error.[26] The trial court's findings are clearly erroneous if, after we have reviewed the entire record, we are definitely and firmly convinced that it made a mistake.[27]

---

[26] *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).

[27] *Coomer*, 245 Mich App at 219.

The proper interpretation and application of the statutory sentencing guidelines is a question of law that this Court reviews de novo.[28] Our purpose when interpreting a statute is to determine and give effect to the Legislature's intent.[29] If the plain and ordinary meaning of a statute's language is clear, we enforce it as written.[30] This Court will not interpret statutes in a way that renders any part of the statute surplusage.[31]

### B. PREVIOUS ADJUDICATIONS UNDER PRV 1

Armstrong contends that the trial court improperly assessed him 25 points under PRV 1 because, though he was previously tried as an adult, the previous trial court sentenced him as a juvenile. Armstrong contends that under such circumstances the trial court should instead score PRV 3. We conclude that the trial court properly determined that it must score PRV 1 because Armstrong was tried as an adult and thus had a conviction.

The trial court properly scores PRV 1 if the defendant has previous high-severity felony convictions.[32] In contrast, the trial court should score PRV 3 if the offender has previous high-severity juvenile adjudications.[33]

MCL 712A.2d concerns juveniles who are tried as adults following the prosecuting attorney's designation. There are two subsections of MCL 712A.2d at issue here: MCL 712A.2d(7) and MCL 712A.2d(8). MCL 712A.2d(7) provides that a juvenile tried as an adult

---

[28] *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

[29] *Id.*

[30] *Id.*

[31] *People v Blunt*, 282 Mich App 81, 83; 761 NW2d 427 (2009).

[32] MCL 777.51(1).

[33] MCL 777.53(1).

who is found guilty or who pleads guilty or no contest receives a judgment of conviction, which has "the same effect and liabilities as if it had been obtained in a court of general criminal jurisdiction." MCL 712A.2d(8) directs the trial court to sentence the juvenile under "section 18(1)(n) of this chapter."[34] Interestingly, there is no such subdivision: MCL 712A.18(1) ends at MCL 712A.18(1)(m), which provides that the trial court may impose a sentence on the juvenile that could be imposed on an adult, or may delay imposing a sentence of imprisonment and may instead place the juvenile on probation. However, whether MCL 712A.2d(8) contains a typographical error is not determinative in this case.

The clear import of MCL 712A.2d is that a juvenile tried as an adult receives a *conviction*. In contrast, juveniles who proceed as juveniles are *adjudicated responsible*.[35] PRV 1 concerns convictions.[36] PRV 3 concerns juvenile adjudications.[37] And, notably, MCL 712A.18e—to which the instructions section for the prior record variables directly refers[38]—also draws a distinction between adjudications and convictions.[39] We thus conclude that the trial court must score the previous conviction under PRV 1, regardless of how the previous trial court sentenced the juvenile.

Here, the previous trial court tried Armstrong as an adult for allegedly engaging in forcible sexual intercourse with a girl when he was 14 years old. Armstrong

[34] MCL 712A.2d(8).

[35] See, e.g., *In re Hutchinson*, 278 Mich App 108, 109; 748 NW2d 604 (2008).

[36] See MCL 777.51(1).

[37] See MCL 777.53(1).

[38] MCL 777.50(4)(c).

[39] See MCL 712A.18e(5) ("any record of adjudication *or* conviction . . . setting aside of any adjudication *or* conviction . . . .") (emphasis added).

pleaded no contest to a charge of assault with intent to commit sexual penetration and received a conviction. Exercising its sentencing discretion, the previous trial court delayed Armstrong's imprisonment and placed him on probation. We conclude that the previous trial court's decision regarding Armstrong's sentence did not alter the fact that he received a conviction. Under MCL 712A.2d(7), Armstrong's previous conviction has the same liabilities as any other adult conviction. Thus, the trial court here properly assessed Armstrong 15 points under PRV 1.

### C. PHYSICAL INJURY UNDER OV 3

Armstrong contends that the trial court improperly assessed 10 points under OV 3 because there was no evidence that the complainant received or required medical treatment. We agree.

The trial court may consider all the record evidence when sentencing, including the contents of a presentence investigation report.[40] A preponderance of the record evidence must support the trial court's determinations.[41]

The trial court scores OV 3 if a victim was physically injured. OV 3 provides, in relevant part:

> (d) Bodily injury requiring medical treatment occurred to a victim.................................................................10 points
>
> (e) Bodily injury not requiring medical treatment occurred to a victim ..................................................... 5 points
>
> (f) No physical injury occurred to a victim .... 0 points[42]

---

[40] *People v Walker*, 428 Mich 261, 267-268; 407 NW2d 367 (1987).

[41] *Osantowski*, 481 Mich at 111; *People v Williams*, 191 Mich App 269, 276; 477 NW2d 877 (1991).

[42] MCL 777.33(1).

Whether an injury required medical treatment depends on whether the treatment was necessary, not on whether the victim successfully obtained treatment.[43]

We note that, during the sentencing hearing, the prosecutor relied on a "SANE report" that does not appear in the record. There was no testimony at trial regarding the report, the prosecutor did not admit the report into evidence at the trial or sentencing hearing, and the report is not a part of Armstrong's presentence investigation report. However, we need not decide whether the trial court properly relied on the SANE report. Even if the trial court properly considered the prosecutor's statement that the SANE report showed that the complainant suffered from a reddened and tender hymen, the evidence did not support assessing 10 points under OV 3 because there is no evidence that medical treatment was necessary for her injury.

The complainant did not testify that she received any treatment, and neither of the police officers who testified stated that the complainant received medical treatment. Marshall Police Lieutenant Scott McDonald testified that a nurse examiner collected DNA samples from the complainant, and Officer Robert Ritsema only responded affirmatively when asked if officers took the complainant for "the SANE examination." Were we to construe OV 3 in a way that would allow courts to assume that all bodily injuries require medical treatment, when there is no evidence that treatment was necessary, it would render MCL 777.33(1)(e)—which concerns injuries that do *not* require medical treatment—surplusage.[44] We decline to do so.

---

[43] MCL 777.33(3).

[44] Compare *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011) (the trial court properly assessed 10 points for OV 3 when the sexual assault victim received precautionary medical treatment), with

We conclude that a preponderance of the record evidence did not support the trial court's determination that the complainant required medical treatment.

### D. PSYCHOLOGICAL INJURY UNDER OV 4

Armstrong contends that the trial court should not have assessed 10 points under OV 4 because the complainant did not want counseling and did not suffer a serious psychological injury. We disagree.

The trial court must score 10 points for OV 4 if a "[s]erious psychological injury requiring professional treatment occurred to a victim."[45] Whether the victim has sought treatment does not determine whether the injury may require professional treatment.[46] The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated.[47]

Here, the complainant expressed that she has felt confusion, emotional turmoil, anger, guilt, and the inability to trust others. The complainant's father stated that she was suffering emotional difficulties. And, though the complainant testified that she did not want counseling because she did not want to continue to talk about her experience, the complainant's father stated that the complainant would eventually receive counseling. Thus, the complainant's statements about the way the sexual assault affected her life showed that she suffered a psychological injury, and the complainant

*People v Apgar*, 264 Mich App 321, 329; 690 NW2d 312 (2004) (opinion by GAGE, J.) (the trial court properly assessed 5 points for OV when the sexual assault victim sustained redness to her vaginal opening).

[45] MCL 777.34(1)(a).

[46] MCL 777.34(2).

[47] *People v Gibbs*, 299 Mich App 473, 493; 830 NW2d 821 (2013).

may require treatment in the future. We conclude that the trial court did not clearly err when it found that the complainant suffered a serious psychological injury requiring professional treatment.

### E. RESENTENCING IS REQUIRED

We have concluded that the trial court should not have assessed Armstrong 10 points under OV 3. If a sentencing error results in a different sentencing guidelines range, the defendant is entitled to resentencing.[48] Here, reducing Armstrong's score by 5 points—from 50 to 45 points—reduces his minimum sentence range from 78 to 130 months' imprisonment to 72 to 120 months' imprisonment.[49] Accordingly, we conclude that Armstrong is entitled to resentencing.

### VI. CONCLUSION

We conclude that Armstrong has not established that the prosecutor's peremptory challenge to the juror was racially motivated or that the trial court erred by instructing the jury. We also conclude that the trial court properly denied Armstrong's motion for a new trial, properly scored him under PRV 1 for his previous conviction of assault with intent to commit sexual penetration, and properly assessed him 10 points under OV 4. However, we conclude that the trial court clearly erred by assessing 10 points under OV 3 because no evidence supported its finding that the complainant suffered a bodily injury requiring medical treatment. Because the trial court's error changes Armstrong's sentencing range, he is entitled to resentencing.

[48] *People v Jackson*, 487 Mich 783, 793-794; 790 NW2d 340 (2010); *People v Francisco*, 474 Mich 82, 91-92; 711 NW2d 44 (2006).

[49] MCL 777.16y; MCL 777.63.

We affirm Armstrong's conviction, but vacate his sentence and remand for resentencing. We do not retain jurisdiction.

FITZGERALD, P.J., and SAAD and WHITBECK, JJ., concurred.