*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
December 28, 2023

v

DELON DEON THOMAS,

Defendant-Appellant.

No. 363912
Genesee Circuit Court
LC No. 21-047665-FC

Before: BORRELLO, P.J., and SWARTZLE and PATEL, JJ.

PER CURIAM.

Defendant, Delon Deon Thomas, was convicted by a jury of one count of carjacking, MCL 750.529a, and one count of armed robbery, MCL 750.529(1)(a). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 15 to 37½ years' imprisonment for each conviction. Defendant appeals as of right, challenging his convictions and sentences. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

On October 5, 2020, defendant contacted KW on a dating website, and the two met at a gas station in Saginaw, Michigan. When KW arrived at the gas station, he saw defendant in a black Pontiac G6 with no plates on it. KW asked defendant what happened to his car, and defendant stated that it was a rental. KW followed defendant to Flint, and defendant left his car at a house that defendant said was his sister's house. KW and defendant went to a motel, but the two did not stay overnight.

After KW returned the room keys to the office, KW agreed to take defendant to get marijuana. KW parked his vehicle behind the house that defendant had directed him to, and defendant told KW to get out of the vehicle. Defendant told KW to go toward the door of the house, told KW that he had a gun, and threatened to kill him. KW turned around to face defendant and saw that defendant had a gun.

Defendant demanded KW's wallet and the PIN for his debit card, fearing for his life, KW complied. KW also gave defendant his cell phone. Defendant told KW that if KW gave him the

wrong PIN, defendant was going to come back and kill him. Before driving away in KW's vehicle, defendant told KW not to move because somebody in the house had a gun pointed at KW, so KW sat down on the stoop and waited for approximately 20 minutes. He then began running and eventually arrived at a gas station, where he used the phone to call the police. KW's vehicle was recovered by the Michigan State Police on October 17, 2020, and defendant was found in the passenger side of the vehicle with a woman in the driver's seat.

At trial, the prosecutor presented other-acts evidence of defendant's theft of the Pontiac G6 prior to the charged offenses. On September 28, 2020, defendant contacted KS on a dating website, and the two arranged to meet and get a motel room. Before arriving at the motel room, KS stopped at a drugstore and went inside. When he came out of the drugstore, his car—a Pontiac G6—was gone, so KS took an Uber home and called the police to report that his vehicle had been stolen. KS testified that defendant had a gun the entire time, but KS opined that defendant did not want to rob him at gunpoint, so when defendant had an opportunity to take his car, defendant "just took it." KS did not have a plate on the vehicle at that time because the title had not yet been transferred to his name. KS's vehicle was recovered by Genesee Township Police on October 28, 2020, following a traffic stop, and defendant was found in the passenger side of the vehicle with a woman in the driver's seat.

During closing statements, defense counsel argued that it could have been anybody who committed the charged offenses. On rebuttal, the prosecutor acknowledged that defendant's identification was at issue.

Before jury deliberations began, the trial court instructed the jury, in relevant part:

You have heard evidence that was introduced to show that the Defendant committed crimes or improper acts for which he is not on trial. If you believe this evidence, you must be very careful only to consider it for certain purposes. You may only think about whether this evidence tends to show that the Defendant used a planned system or characteristic scheme that he had used before or since and whether—and as to who committed the crime that the Defendant is charged with.

So, you can only consider the evidence that we've talked about other alleged crimes or bad acts regarding whether the Defendant used a planned system or characteristic scheme that he has used since before or since or who committed the crime that the Defendant is charged with [sic]. You must not consider this evidence for any other purpose.

For example, you must not decide that it shows that the Defendant is a bad person or that he is likely to commit crimes. You must not convict the Defendant because you think he is guilty of other bad conduct.

The jury subsequently returned a guilty verdict of one count of carjacking and one count of armed robbery, and acquitted defendant on three counts of felony-firearm and one count of felon in possession of a firearm. Defendant then brought this appeal.

## II. ANALYSIS

## A. OTHER-ACTS EVIDENCE

On appeal, defendant argues that the trial court abused its discretion by admitting evidence related to the theft and recovery of KS's vehicle. Specifically, defendant argues that the trial court abused its discretion when it allowed the prosecutor to introduce evidence related to the theft and recovery of KS's vehicle. Defendant admits that while there was substantial evidence to support a finding that defendant stole KS's vehicle, the previous theft and the charged conduct were not sufficiently similar, and the previous theft failed to establish a common modus operandi. The only thing similar about these two incidents were that both victims "were gay males who claimed to meet [defendant] through gay dating websites or cell phone 'apps.' " Defendant therefore argues that the prejudice of the prior act outweighed any probative value the evidence may hold.

The prosecutor argues that trial court correctly ruled that the previous theft and the charged conduct were sufficiently similar. The fact that defendant showed up to meet the victim in a car that defendant had previously stolen in a similar manner is highly probative of identity. The identity of defendant was at issue; therefore, the previous conduct was relevant. The probative value of the previous conduct was not substantially outweighed by the danger of unfair prejudice because the trial court gave the jury a limiting instruction to consider the evidence only with respect to modus operandi and identification. Finally, the admission of the other-acts evidence was not outcome-determinative because there was "substantial untainted documentary and testimonial evidence that proved that defendant committed the charged offenses beyond a reasonable doubt."

"[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Galloway*, 335 Mich App 629, 644; 967 NW2d 908 (2020) (quotation marks and citation omitted; alteration in original). "A high degree of similarity is required—more than is needed to prove intent, but less than is required to prove identity—but the plan itself need not be unusual or distinctive." *Id*. at 644-645 (quotation marks and citation omitted).

Review of the record leads us to conclude that the theft of KS's vehicle was sufficiently similar to the theft of KW's car such that the evidence demonstrated defendant's identity through modus operandi. At defendant's jury trial, both KS and KW testified that defendant contacted them on a dating website. Both witnesses met with defendant, defendant got into their vehicles, and they drove around to find a motel room. Regardless of whether defendant and KS actually went to a motel room, KS's testimony clearly indicated that the two intended to go to a motel room. Similarly, defendant had a gun in both situations. Although defendant did not use the gun to take KS's vehicle, KS testified that he saw defendant with a gun the entire time. In addition, not even two weeks elapsed between the theft of KS's vehicle and the theft of KW's vehicle. Finally, defendant was found in the passenger seat of both vehicles with the same individual in the driver's seat.

Prior to trial, defendant indicated to the court that identity would be an issue. Indeed, the defense asserted at trial was that defendant was not the person who robbed the victim and stole his car. Thus, contrary to the assertions of defendant on appeal, evidence concerning the theft and recovery of KS's vehicle was highly probative of defendant's identity as the perpetrator of the charged offenses. Record evidence reveals that KW testified defendant arrived at his house in a

black Pontiac G6, which did not bear a license plate. KS testified that defendant stole his black Pontiac G6, which KS had not put a license plate on. KS's testimony concerning the theft of his Pontiac G6 provided the jury with evidence of defendant's identity as the one who drove the Pontiac G6 when meeting KW. In addition, police reports indicated that defendant was found in KS's stolen vehicle, as well as in KW's stolen vehicle.

Moreover, the trial court mitigated any prejudice to defendant when it instructed the jury to consider the other-acts evidence only "regarding whether the Defendant used a planned system or characteristic scheme" and "not decide [whether] it shows that the Defendant [was] a bad person or that [he was] likely to commit crimes." Because the evidence was probative of defendant's identity and common scheme or plan, and because the jury is presumed to have followed the court's instructions, *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011), there was no abuse of discretion in allowing the prosecutor to introduce evidence related to the theft and recovery of KS's vehicle. Accordingly, defendant is not entitled to relief on this issue.

## B. SCORING ERROR

Next, defendant argues that the trial court erred by assessing 10 points for OV 4 because there was insufficient evidence to support a finding that KW suffered serious psychological harm that may require medical treatment. Defendant asserts that the trial court supported the scoring of OV 4 on the basis of KW's trial testimony that he felt terrified during the charged offense, however, there was nothing in the record to suggest that KW considered seeking professional psychological treatment or that KW will ever need to seek professional psychological treatment. Accordingly, defendant argues, the trial court's findings were "wildly speculative" and did not support the assessment of 10 points for OV 4.

The Prosecutor argues that defendant is not entitled to rescoring of OV 4 because his conduct caused serious psychological injury to KW that may require professional treatment. KW testified at trial that he has continued anxiety and that he has continued to have issues returning to normal life without fear. The fact that KW did not seek treatment is not conclusive for the purpose of scoring OV 4. There was objective, verifiable evidence that KW suffered psychological injury that may require professional treatment. Therefore, the trial court correctly assessed 10 points for OV 4.

"This Court reviews for clear error a trial court's findings in support of a particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v McFarlane*, 325 Mich App 507, 531-532; 926 NW2d 339 (2018). Clear error exists when this Court is "left with a definite and firm conviction that a mistake was made." *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019). "Under the sentencing guidelines, the circuit court's factual determinations . . . must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded by statute on other grounds as stated by *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019).

OV 4 addresses "psychological injury to a victim." MCL 777.34(1). A sentencing court is required to "[s]core 10 points if the serious psychological injury may require professional treatment," but "the fact that treatment has not been sought is not conclusive." MCL 777.34(2).

For example, "[t]he trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). "However, the scoring of OV 4 cannot be based on the assumption that people *typically* suffer psychological injury when they are victims of the type of crime in question; and while relevant, a victim's fear *during* the crime does not by itself justify the scoring of OV 4." *People v Lampe*, 327 Mich App 104, 114; 933 NW2d 314 (2019).

"When calculating sentencing guidelines, the trial court may consider all record evidence, including the presentence investigation report (PSIR), plea admissions, and testimony. The trial court may also consider victim-impact statements, and may make reasonable inferences from evidence in the record." *People v Montague*, 338 Mich App 29, 55; 979 NW2d 406 (2021) (citation omitted).

During the jury trial, the prosecutor asked KW about the impact that the incident had on his life, and he testified, in relevant part:

> I will never forget this. What happened. I couldn't sleep. Um. I can't have people behind me now. If somebody riding in the car with me or behind me, it just do[es] something to me. It took me months to, um, to get back somewhat normal and it's still not there. Like I'm not the same person like I was. It's hard for me to trust anybody now.

Considering KW's trial testimony, the trial court had sufficient reasons to assess 10 points for OV 4. Not only did KW testify that defendant's conduct affected his ability to sleep and trust other people, KW also stated that he has had problems returning to normal life without fear because of defendant's conduct in the charged offenses. Contrary to defendant's suggestion, there is no statutory requirement that KW must have *indicated* that he may need professional treatment for the serious psychological injury, let alone that he actually received any treatment. KW's trial testimony supported, by a preponderance of the evidence, the trial court's finding of serious psychological injury that may require professional treatment. Accordingly, defendant is not entitled to relief on this issue.

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Sima G. Patel