*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

REGINALD FRANCIS PETITE,

Defendant-Appellant.

UNPUBLISHED
October 22, 2024
10:36 AM

No. 366739
Wayne Circuit Court
LC No. 21-001799-01-FC

Before: YATES, P.J., and CAVANAGH and MARIANI, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of torture, MCL 750.85; three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1) (multiple variables); unlawful imprisonment, MCL 750.349b; assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84; two counts of assault with a dangerous weapon (felonious assault), MCL 750.82(1); and aggravated domestic violence, MCL 750.81a(2).[1] Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 35 to 60 years' imprisonment for torture and each count of CSC-I, 4 to 15 years' imprisonment for unlawful imprisonment, 1 to 10 years' imprisonment for AWIGBH, one to four years' imprisonment for each count of felonious assault, and one year in jail for aggravated domestic violence. We affirm defendant's convictions and sentences but remand for the ministerial correction of the judgment of sentence to reflect that the trial court sentenced defendant as a fourth-offense habitual offender.

## I. BACKGROUND AND PROCEDURAL HISTORY

Defendant's convictions arose from his unlawful imprisonment and repeated physical and sexual assault of the victim between December 15 and December 18, 2020. The victim testified that she and defendant had been in a dating relationship since 1998. In February 2020, the victim

---

[1] Defendant was acquitted of an additional count of CSC-I and felonious assault.

suffered a stroke, which resulted in significant physical limitations.[2] The victim moved into defendant's house shortly thereafter so that defendant could care for her as she recovered.

The victim testified that on December 15, 2020, defendant accused her of having an affair with another person in his house. The victim denied doing so, and an argument ensued. The victim stated that defendant then "just started hitting" her. Defendant repeatedly punched the victim in the face, torso, and arms as he yelled at her and called her degrading names. Defendant then strangled the victim until she lost consciousness. When the victim regained consciousness, defendant dragged her by her hair to a mattress on the floor of the living room,[3] held an ice pick against her head, and forced her to perform oral sex on him. Defendant fell asleep shortly thereafter, and the victim remained on the mattress next to him because she struggled to move around unassisted and feared that defendant would kill her if she attempted to get up.

The victim testified that she attempted to escape the following day after she awoke and saw that defendant was gone, but she was unable to do so because the exterior door was deadlocked shut and the stroke left her too weak to break the windows. The victim was also unable to call for help because defendant had taken her cell phone and there was no landline in defendant's house. Defendant subsequently returned and, for reasons unknown to the victim, appeared angry and upset. Defendant yelled at the victim and repeatedly punched her in the face and body. When the victim screamed, defendant wrapped a cloth belt around her neck, told her to "shut up," and strangled her until she lost consciousness. After the victim regained consciousness, defendant stated, "Oh you survived that one," and strangled the victim until she lost consciousness a second time. When the victim awoke again, defendant stated, "Oh you survived that one too," and walked away. Defendant then returned with a machete-style knife and forcibly penetrated the victim's anus and vagina with the blade of the knife. Defendant stopped after the victim began bleeding from her anus and vagina, told the victim to "plug it up wit [sic] a sock," and went to sleep.

The victim testified that she again attempted to escape after she woke up the following day and determined that defendant was not in the house, but she was unable to do so for the same reasons as before. When defendant subsequently returned, he immediately punched the victim, dragged her to the mattress, and forcibly penetrated her vagina with his penis. Defendant ejaculated onto the victim after several minutes, then went to the kitchen to cook food for himself and the victim. As he did so, the victim again attempted to escape but was unable to do so because the exterior door was locked. The two then ate food and went to sleep. The victim stated that she did not attempt to escape at that time because she believed that defendant would kill her.

The victim testified that defendant woke her up the following day by giving her cocaine. The victim thereafter told defendant she could not breathe in hopes that he would take her to the hospital. Defendant agreed to take the victim to the hospital but told her, "[Y]ou better not be

_____

[2] The victim testified that, after the stroke, she could not use the right side of her body, lost much of her physical strength, and was unable to walk without assistance from a cane or another person.

[3] The victim testified that defendant's house had three bedrooms but that, after she moved in, defendant forced her to sleep on a mattress on the living room floor. Only defendant and the victim lived in the house, and defendant typically slept with the victim in the living room.

breathing or you bet [sic] not say shit to nobody." Once at the hospital and away from defendant, the victim notified hospital staff of what had occurred and that she needed the police. The victim remained in the hospital for approximately three or four days, during which time she participated in a sexual assault examination and was interviewed by the police.

The lead investigating officer testified that he interviewed defendant about the incident. Defendant initially denied striking the victim, but he later admitted to hitting and choking her during an argument. Defendant stated that he could not recall whether he had sex with the victim. Experts in forensic DNA analysis testified that DNA samples collected from the victim during the sexual assault examination and from various items found in defendant's house indicated that defendant's DNA had been present on the victim's labia and the ice pick and that both defendant's and the victim's DNA had been present on the blood-stained mattress and the machete-style knife.

Defendant was convicted and sentenced as previously described. Relevant to this appeal, the trial court assessed 10 points for offense variable (OV) 4 and 10 points for OV 10. Defendant challenged the scoring of both, which the trial court denied. This appeal followed.

## II. DIMINISHED CAPACITY AS A DEFENSE

Defendant argues that he was denied his due-process right to present a defense because, despite his diagnoses for depression, bipolar disorder, and schizophrenia, he was unable to present diminished capacity as a defense. As defendant concedes, however, the Michigan Supreme Court has already rejected the substance of this argument.[4] See *People v Carpenter*, 464 Mich 223, 236-237, 240-241; 627 NW2d 276 (2001) (holding that, in light of the Legislature's enactment of MCL 768.21a(1), "evidence of mental incapacity short of insanity cannot be used to avoid or reduce criminal responsibility by negating specific intent," and that precluding defendants from presenting a diminished-capacity defense does not violate their due-process right to present a defense); see also MCL 768.21a(1) (providing, in relevant part, that "[m]ental illness or having an intellectual disability does not otherwise constitute a defense of legal insanity"). Defendant nonetheless asks this Court to disregard *Carpenter*, arguing that it was wrongly decided. Our Supreme Court, however, recently declined to disturb its holding in *Carpenter*. *People v Tyson*, 511 Mich 1080; 992 NW2d 293 (2023). *Carpenter* thus remains the law of Michigan, and we are bound to apply its holding, which precludes relief on this issue. See *People v Armstrong*, 344 Mich App 286, 299; 1 NW3d 299 (2022) (noting that this Court is "bound to follow Michigan

---

[4] As defendant also concedes, this argument is unpreserved. Indeed, it appears that no evidence regarding defendant's diagnoses was offered before or during trial and that the first mention of them in the record was in the presentence investigation report (PSIR), which stated, "There is a recent history of mental health for the defendant. He states that he was diagnosed with depression, Bi-polar [sic] and Schizophrenia in 2020. He says that he called the Detroit Wayne Mental Health hotline and his diagnosis came from this phone call." Defendant has not presented any further evidence regarding these diagnoses or how they might have affected his actions during the incidents in question.

Supreme Court decisions except where those decisions have clearly been overruled or superseded") (quotation marks, citation, and ellipsis omitted).

## III. OV SCORING

Defendant argues that he is entitled to resentencing because the trial court erroneously scored OVs 4 and 10.[5] We disagree.

We review de novo whether a trial court properly interpreted and applied the sentencing guidelines. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A trial court's findings of fact are clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake." *People v Carlson*, 332 Mich App 663, 666; 958 NW2d 278 (2020).

"Offense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *McGraw*, 484 Mich at 135. "When calculating sentencing guidelines, the trial court may consider all record evidence, including the presentence investigation report (PSIR), plea admissions, and testimony." *People v Montague*, 338 Mich App 29, 55; 979 NW2d 406 (2021). "The trial court may also consider victim-impact statements, and may make reasonable inferences from evidence in the record." *Id*. A scoring error requires resentencing "only if the error alters the recommended minimum sentence range under the legislative sentencing guidelines." *People v Phelps*, 288 Mich App 123, 136; 791 NW2d 732 (2010), overruled in part on other grounds by *Hardy*, 494 Mich at 438 n 18.

On appeal, defendant argues that OV 4, which concerns the "psychological injury to a victim," was erroneously scored at 10 points because there was insufficient evidence to establish that the victim suffered "[s]erious psychological injury requiring professional treatment." MCL 777.34(1)(a).[6] Defendant also argues that OV 10, which concerns the "exploitation of a vulnerable victim," was erroneously scored at 10 points because there was insufficient evidence that the victim was "vulnerable" or that defendant exploited the victim's "physical disability, mental disability, youth or agedness, or a domestic relationship" when he committed the sentencing

---

[5] Defendant preserved these arguments by challenging the scoring of these variables at sentencing. See *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016).

[6] A sentencing court must assess 10 points for OV 4 "if the serious psychological injury *may* require professional treatment," and "the fact that treatment has not been sought is not conclusive." MCL 777.34(2) (emphasis added). For instance, "[t]he trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014).

offenses. MCL 777.40(1)(b).[7] As relief for these alleged scoring errors, defendant requests that we remand this case for resentencing.

We see no merit in defendant's challenges to the scoring of these OVs. As the previously summarized facts of this case make clear, defendant's convictions were based on his harrowing, multi-day physical and sexual assault of the victim. The record evidence regarding this assault, coupled with the impact statement provided by the victim at sentencing, provided ample support for the conclusions that the victim suffered serious psychological injury that may require professional treatment, MCL 777.34(1)(a), and that defendant exploited both her physical condition and their dating and caregiving relationship, MCL 777.40(1)(b). And regardless, even if the points from these OVs were removed from defendant's score, relief would not be warranted because doing so would not alter defendant's recommended sentencing guidelines range. See *Phelps*, 288 Mich App at 136.[8]

Although defendant is not entitled to relief on the substantive issues raised on appeal, we must remand this case to correct an error contained in the judgment of sentence. It is undisputed that defendant was sentenced as a fourth-offense habitual offender in this case, but the judgment of sentence does not refer to defendant's status as such. We must therefore remand this case to the trial court for the ministerial correction of the judgment of sentence to reflect that defendant was sentenced as a fourth-offense habitual offender. See MCR 7.216(A)(7).

---

[7] " 'Vulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). Although "[t]he mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability," MCL 777.40(2), vulnerabilities may arise out of a victim's characteristics, relationships, or circumstances, *People v Huston*, 489 Mich 451, 464; 802 NW2d 261 (2011). " 'Exploit' means to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b).

[8] Take, for instance, defendant's conviction for torture. Following the scoring corrections made at the sentencing hearing, defendant had a PRV total of 130 points and an OV total of 225 points. Under the sentencing grid applicable to his torture conviction, these scores placed defendant, as a fourth-offense habitual offender, in Level F-VI and resulted in a recommended minimum sentencing range of 270 to 900 months' imprisonment. See MCL 777.16d; MCL 777.62. To change that recommended range, defendant's total OV score would need to be reduced by more than 125 points, see MCL 777.62; eliminating the scores from OVs 4 and 10 would only reduce it by 20 points. Defendant was sentenced within the recommended guidelines range, and that range would not have changed regardless of how OVs 4 and 10 were scored. The same conclusion holds for defendant's other convictions.

Affirmed, but remanded for the ministerial correction of defendant's judgment of sentence consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Philip P. Mariani