*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

URIAH EZRA HALE,

Defendant-Appellant.

UNPUBLISHED
June 09, 2025
1:53 PM

No. 370708
Jackson Circuit Court
LC No. 19-002907-FH

Before: YATES, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

A trial court can only consider the sentencing offense when scoring Offense Variable (OV) 3. When that sentencing offense is delivery of a controlled substance, MCL 333.7401(2)(a)(*iv*) (less than 50 grams), the offense is complete when the delivery is complete. Because the trial court scored OV 3 for a fatal overdose that followed a delivery, we vacate defendant, Uriah Ezra Hale's sentence and remand for resentencing.

## I. FACTUAL AND PROCEDURAL HISTORY

Hale was addicted to drugs and often sold drugs to support his addiction. On March 6, 2019, Hale obtained heroin laced with fentanyl from his drug dealer Myles Jarrell. The next day, March 7, 2019, Hale received a text message from Gabrielle Scheffer, requesting to purchase heroin. Hale sold heroin to Scheffer twice before. At around 4:00 p.m. or 5:00 p.m. that same day, Hale placed the heroin laced with fentanyl from Jarrell in Scheffer's mailbox in exchange for $20. The next evening, Scheffer's father discovered her unresponsive in her bedroom and described he saw the heroin "draining" from her right nostril; she had fatally overdosed. Scheffer was pronounced dead at 11:11 p.m. on March 8, 2019. Three days later, on March 11, 2019, Hale also overdosed on the same heroin laced with fentanyl he delivered to the Scheffer, and almost died.

Law enforcement uncovered the text messages between Hale and Scheffer, and brought Hale in for questioning; Hale admitted that he delivered heroin to Scheffer's mailbox. Hale was charged with delivery of a controlled substance causing death, MCL 750.317a, and with possession of a controlled substance, MCL 333.7403(2)(b)(*i*), in the related LC No. 19-001139-

-1-

FH. In exchange for dismissing the possession charge in the related case and dismissing the delivery-causing-death charge in this case, Hale pleaded guilty to delivery of a controlled substance, MCL 333.7401(2)(a)(*iv*) (less than 50 grams). Hale also had to cooperate with the investigation into, and ultimately testify against his dealer Jarrell, a large distributor of heroin. Hale's plea did not include a sentencing agreement.

A presentence investigation report was prepared and reviewed by the trial court before sentencing. Hale had a prior record variable (PRV) score of 20 points placing him in PRV Level C, and an OV score of 105 points, placing him at OV level VI. His recommended minimum guidelines sentencing range was 29 to 85 months. Defense counsel objected to the scoring of OV 3 at 100 points, arguing that because there was "quite a lag in time" between when Hale delivered heroin to Scheffer and when she overdosed, the drugs that killed Scheffer could have been from someone other than Hale. The trial court upheld scoring OV 3 at 100 points over defense counsel's objection.

Defense counsel emphasized that Hale himself had a history of substance abuse, one that Hale stated he was ready to confront and overcome. Defense counsel asked the trial court to consider a 36 month minimum sentence and "boot camp type programs" to further assist Hale's recovery efforts, and stressed that but for scoring OV 3 at 100 points, Hale's guidelines would have been zero to 16 months' punishment. Scheffer's family also gave statements at sentencing, emphasizing how loved Scheffer was and that she only began using substances because of pressure and influence from Hale. Scheffer's mother shared that Scheffer's biological father took his own life 14 months after Scheffer's fatal overdose because his mental health declined as a result of her death.

The trial court asked what Hale's minimum guidelines sentencing range would have been had he pleaded guilty to the delivery-causing-death charge[1] and stated the four goals to balance in sentencing Hale were to punish, to deter crime, to protect the community, and that the trial court must individualize the sentence to Hale's case. The trial court observed that Hale was 25 years old at the time of sentencing, had two prior felonies, four prior misdemeanors, had only a ninth-grade education, and was unemployed. The trial court noted the increased deaths by fentanyl overdose in the broader community, something he could not blame on Hale alone but also attributed to:

> a little thing called the Federal Government that's responsible for a whole lot of this. I mean we have an absolutely poor southern border where the Chinese bring in fifty gallon drums, sell them to the drug cartels full of fentanyl, but then greedy drug dealers like [] Jarrell and you decide that you're going to cut things like—like Xanax tablets, you know methamphetamine, anything with—with fentanyl, which is you know essentially a horse tranquilizer that a small amount call kill almost any average person. . . . [S]o it doesn't surprise me to read in your sentencing

---

[1] The prosecutor responded that the guidelines for delivery causing death would have been 51 to 127 months' imprisonment.

memorandum that you're, you know that you're also using drugs and you're overdosing, you've overdosed several times.

The trial court also criticized the medical industry for over-prescribing Oxycontin, which the trial court characterized as a gateway to Xanax and heroin laced with fentanyl. The trial court felt that even though Hale suffered "some pretty grievous recovery wounds" from his own drug addiction, he was still "peddling that poison knowing full well what it can do to people. And the only reason I'm even sitting here talking a little bit about the border is because hundreds of thousands of Americans have died in this [country], all across the United States. . . . and its cause [sic] of people like you." The trial court also mentioned Hale only testified against Jarrell to avoid prison time, and not for any noble reason, and found significant that it had to encourage Hale to look at Scheffer's mother while she was giving her victim impact statement. The trial court felt Hale's allocution was insufficient, and that he should have taken full accountability for what he did, and should have said that he wished he could trade places with Scheffer. Upon hearing this, Hale said: "I would do that in a heartbeat, your honor. . . . That's not the case your Honor, I'm just extremely nervous and I couldn't think, can't get my words out that I want [to] say."

Finally, the trial court considered defense counsel's request that Hale be sent to boot camp to finish his recovery, but stated there was nothing other than Hale testifying against Jarrell that could be a mitigating factor in sentencing Hale. The trial court only saw aggravating factors, including that Scheffer told Hale she wanted to overcome her drug addiction just days before her death, and that he was still willing to sell drugs to her. The trial court stated Hale was not the first defendant that tried to present themselves at sentencing as an addict who should serve less prison time because they went to a rehabilitation program. In response to this, Hale reiterated that he would trade places with Scheffer and that her death weighed heavily on him.

After stating it fully considered all the facts of this case, the trial court sentenced Hale as a third-offense habitual offender, MCL 769.11, to one month shy of the top of his minimum guidelines range to a term of 7 years (84 months) to 40 years (480 months) imprisonment, with credit for 423 days served. In rendering this sentence, the trial court stated:

> . . . frankly, I could depart if you weren't at least willing to cooperate against [] Jarrell and had consistently indicated your willingness to do that, although I'm a little skeptical of the reasons other [than] those detailed by [Scheffer] then I, I'd be looking for reasons [] to depart but I'm just not sure that I'd get upheld on a Court of Appeals but I—I definitely articulated the case to give you the maximum possible sentence here today.

Hale now appeals by leave granted.[2] Hale challenges the scoring of OV 3 at 100 points, and argues his sentence, while within the guidelines range, is unreasonable and disproportionate and constitutes cruel and unusual punishment. Because the trial court improperly assessed 100 points

---

[2] *People v Uriah Ezra Hale*, unpublished order of the Court of Appeals, entered June 18, 2024, (Docket No. 370708).

OV 3 and this affects the guidelines range, requiring resentencing, we vacate and remand for resentencing without considering whether Hale's sentence is disproportionate.

## II. ANALYSIS

Hale first argues OV 3 should be scored at zero points instead of 100 points, altering his minimum guidelines sentencing range and entitling him to resentencing.

OV 3 directs the sentencing court to score 100 points where "a victim is killed" and where "death results from the commission of a crime [but] homicide is not the sentencing offense." MCL 777.33(1)(a) and (2)(b). Hale admits he sold drugs to Scheffer, but argues that the gap in time between selling the drugs and the overdose causing death, over 24 hours, is too long to score 100 points for OV 3, and would break the chain of causation. Hale argues there is no evidence that the drugs Scheffer ingested were the drugs Hale delivered.

The prosecution argues OV 3 was properly scored at 100 points because the causation between Hale's drug delivery and Scheffer's death is supported by reasonable inferences from the record. Scheffer knew Hale was a user and supplier and had purchased heroin from him before, and Scheffer's cause of death was drug intoxication caused by fentanyl. Hale also overdosed and nearly died three days later after using drugs from the same dealer as that which he gave to Scheffer. The prosecution argues the gap between delivery and Scheffer's death is not enough by itself to break the chain of causation or show Hale was not the source of the drugs which caused her death; given the lack of any evidence of other sources Scheffer could have obtained the heroin laced with fentanyl from, it is more likely than not that but for Hale's delivery, Scheffer's death would not have occurred.

When reviewing alleged errors in sentencing, "the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded in part by statute as stated in *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019). The trial court may rely on reasonable inferences arising from the record evidence to support a particular score. *People v Barnes*, 332 Mich App 494, 499; 957 NW2d 62 (2020). A trial court's findings are clearly erroneous if, after review of the record, this Court is "definitely and firmly convinced" that the trial court made a mistake. *People v Armstrong*, 305 Mich App 230, 237; 851 NW2d 856 (2014). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. citing *People v Babcock*, 469 Mich 247, 253; 666 NW2d 231 (2003).

OV 3 is what practitioners colloquially refer to as a "*McGraw* variable," or a variable "to be scored by reference only to the sentencing offense, except where specifically provided otherwise." *People v McGraw*, 484 Mich 120, 129; 771 NW2d 655 (2009). See also *People v Biddles*, 316 Mich App 148, 165; 896 NW2d 461 (2016) ("OV 3 does not specifically provide otherwise; therefore, [this Court] can only take into consideration [the] defendant's sentencing offense for purposes of scoring OV 3."). As this Court recently clarified, "the facts giving rise to the scoring [of OV 3] must still occur during the commission of the crime for which the defendant

is sentenced." *People v Jackson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366078); slip op at 3.

OV 3 assesses physical injury to the victim, and directs the trial court to score 100 points where "a victim is killed" and "if death results from the commission of a crime and homicide is not the sentencing offense." MCL 777.33(1)(a) and (2)(b). Here, Hale pleaded guilty to delivery of a controlled substance. He committed this crime at around 4:00 p.m. or 5:00 p.m. on March 7, 2019. When he placed the heroin in Scheffer's mailbox, the crime of delivery was complete. Anything occurring after, including Scheffer's fatal overdose, should not have been considered by the trial court for scoring OV 3. *Jackson*, ___ Mich App at ___, slip op at 3. We do not disagree with the prosecution's arguments that it is more likely than not that but for Hale's delivery, Scheffer's death would not have occurred. But our issue here is not one with causation so much as it is with the temporal limitations under the law. Put differently, even if Scheffer overdosed only a few hours later, rather than the following day, the crime of delivery was still complete before the overdose occurred. Thus, the trial court clearly erred when it scored 100 points for OV 3. *Armstrong*, 305 Mich App at 237 citing *Babcock*, 469 Mich at 253.

Scoring OV 3 at zero points would lower Hale's total OV score from 105 points to five points, placing him in OV Level I. Because this lowers his minimum guidelines sentencing range to 0-16 months' punishment under the sentencing grid for Class D offenses, MCL 777.65, Hale is entitled to resentencing. *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006). See also MCL 769.34(10).

### III. CONCLUSION

Vacated and remanded for resentencing. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Adrienne N. Young
/s/ Randy J. Wallace