*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHANE ISAAC CLENDENIN,

        Defendant-Appellant.

UNPUBLISHED
March 12, 2026
10:03 AM

No. 365716
Van Buren Circuit Court
LC No. 2022-023782-FH

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, following a jury trial, of four counts of third-degree criminal sexual conduct (CSC-III), contrary to MCL 750.520d(1)(a)[1] (sexual penetration with person at least 13 years of age and under 16 years of age). The jury acquitted defendant of two additional counts of CSC-III. The trial court sentenced defendant as a fourth offense habitual offender, MCL 769.12, to 99 months to 30 years' imprisonment for each count, with the sentences to be served concurrently. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The complainant was 16 years old at the time of trial. She testified that she had known defendant since she was "a kid" because her mother was friends with defendant. During the summer of 2020, when the complainant was 13 years old, the complainant went to defendant's house "like every other day" while the complainant's mother was at work. Generally, the complainant would go to defendant's house in the morning and stay until approximately 10:00 p.m. when her mother finished work. The complainant testified that she had a "crush" on defendant that began when she was "little." Defendant lived with his son, who was approximately 6 or 7 years old, defendant's girlfriend and defendant's nephew who was approximately 15 years old.

---

[1] The recent amendments to MCL 750.520d did not affect Subsection (1)(a). See 2023 PA 126.

The complainant testified that one day during that summer, she was riding a four-wheeler with defendant in the grape field next to his house. Defendant and the complainant were on the same four-wheeler, and defendant's son was riding a different four-wheeler. The complainant testified that defendant had stopped the four-wheeler and as they were talking, they "kind of just kissed." According to the complainant, this was their first incident of physical contact.

The complainant testified that the next instance of physical contact occurred in defendant's basement on a separate day. She described the basement as large, concrete, and unfinished, with a wood stove and a bed. The complainant testified that she and defendant had vaginal intercourse, that she was not "force[d]," and that she intentionally went to the basement with defendant to have sexual intercourse with him. Defendant's son was home at the time but his girlfriend was not. When defendant's girlfriend returned, the complainant was wearing the girlfriend's pants because there was blood on the complainant's pants.

Next, the complainant testified about another incident that occurred in defendant's bathroom. She was "doing [her] hair," and defendant was next to her. Defendant and the complainant then had anal intercourse. The complainant testified that "it just kind of happened," and it "hurt."

Additionally, the complainant testified that she and defendant had penile-oral sex more than two times but fewer than five times.

The complainant testified that she and defendant had vaginal intercourse "[l]ike six" times and that these incidents occurred in the "barn, the bathroom, downstairs, the car and the four-wheeler." She clarified that "downstairs" meant the basement, and she also testified that the instance of anal intercourse was the only incident that occurred in the bathroom. The complainant also indicated that she and defendant engaged in vaginal intercourse in defendant's bedroom while the complainant's mother and defendant's girlfriend were downstairs. According to the complainant, she was always with defendant and was alone with him "[e]very" time she was at his house. Defendant's girlfriend was either "[a]t the store" or "downstairs smoking meth." The complainant also clarified that she never had vaginal intercourse with defendant in the barn but had actually engaged in oral sex with defendant.

Defendant's girlfriend testified that there was a period of time during the summer of 2020 when the complainant was at the home of defendant approximately "[e]very other day." The girlfriend did not "see much [sic] interactions" between defendant and the complainant. She testified that the complainant had told her that she had a "crush" on defendant, and the girlfriend "thought it was cute." She further indicated that she knew of only one time when the complainant and defendant were at the home without her present. On that occasion, the girlfriend went to the store and left defendant and complainant at the house. She was gone for approximately an hour and a half or two hours. When she returned, the complainant was wearing a pair of her pajama pants and "acting a little standoffish." She further testified that the complainant did not seem to want to talk much and was "just acting different." Defendant was outside.

Defendant testified and denied that he ever had sex with the complainant. Defendant testified that he went to school with the complainant's mother and had known the complainant "since she was born." During 2020, the complainant's mother frequently "would come over and

party" with defendant's girlfriend. In June 2020, defendant and the complainant's mother had an argument and he told the mother to leave and not come back.

Defendant was convicted and sentenced as previously stated. This appeal followed.

## II. "FLIGHT" EVIDENCE AND JURY INSTRUCTION

We begin with defendant's challenge directed at (1) evidence that he was hiding when law enforcement came to his home to arrest him and (2) a corresponding jury instruction. Defendant appears to raise two related issues: he first argues that the trial court erred by giving the jury instruction on flight because there was no evidence to support it, and he secondly argues that the evidence that was used to justify the flight instruction did not actually constitute "flight" evidence.

At trial, defendant's girlfriend testified that she learned at some point that there was an arrest warrant for defendant related to CSC charges. She testified that when law enforcement came to the house, defendant was in "a sub-wall in the closet." Defense counsel objected to this testimony on relevance grounds, and the trial court overruled the objection. She subsequently explained that defendant had cut out a portion of the wall in a closet and made this hiding area in the closet. She also testified that it was designed to hide a person. Defendant was hiding in this spot when law enforcement arrived to arrest him. Defendant testified, however, that he had fashioned this area for the purpose of hiding marijuana.

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant's appellate argument appears to raise both an evidentiary issue and a jury instruction issue, although the emphasis of the argument seems to primarily focus on the jury instruction issue.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993).

Here, defendant's trial counsel objected to the girlfriend's testimony that defendant was in a sub-wall within a closet when law enforcement arrived at the residence to arrest defendant, but defendant's trial counsel objected on the ground of relevance. On appeal, however, defendant appears to argue that although "flight" evidence is generally admissible, this particular evidence did not actually constitute "flight" evidence because there was no evidence that defendant was motivated to hide out of a fear of apprehension. Defendant has therefore failed to preserve this issue for appeal because he did not object in the trial court on the same ground asserted on appeal. *Aldrich*, 246 Mich App at 113; *Stimage*, 202 Mich App at 30.

With respect to the jury instruction issue, a "party must object or request a given jury instruction to preserve the error for review." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000).

Before the final jury instructions were given to the jury, and outside the presence of the jury, defendant's trial counsel objected to the "flight" instruction as follows:

> Your Honor I would object to instruction 4.4. As the Court knows I've objected to the evidence being submitted in, but I don't think evidence regarding Mr. Clendenin hiding in a closet is relevant in any way to this case and I don't believe it should have come in. Now admittedly, now that it has, I think the instruction probably is needed but I did just want to register my objection generally to that evidence coming in.

The trial court nonetheless gave an instruction to the jury consistent with M Crim JI 4.4, instructing the jury as follows:

> There has been some evidence that the defendant tried to hide or hid after the alleged crime. This evidence does not prove guilt. A person may run or hide for innocent reasons such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true, and if true, whether it shows that the defendant had a guilty state of mind.

Again, although defendant's trial counsel nominally objected to the instruction, the objection was based on a different argument than the one defendant now advances on appeal. Defendant argues on appeal that the instruction was unwarranted because the evidence that he was hiding when law enforcement arrived that was admitted at trial did not actually constitute "flight" evidence, whereas defendant essentially argued in the trial court that this evidence should not have been admitted in the first place because it was not relevant. Defendant's trial counsel appeared to concede that the instruction was warranted based on the evidence that had been admitted, although counsel maintained his objection to the admissibility of that evidence. Hence, even assuming that this argument is not waived for appeal, it is—at a minimum—unpreserved because an objection on one ground is not sufficient to preserve an appellate argument based on a different ground. *Aldrich*, 246 Mich App at 113; *Stimage*, 202 Mich App at 30.

Generally, the "decision whether to admit evidence is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion." *Aldrich*, 246 Mich App at 113. However, unpreserved evidentiary issues are reviewed for plain error affecting the defendant's substantial rights. *People v Brown*, 326 Mich App 185, 195; 926 NW2d 879 (2018), amended on other grounds 326 Mich App 185 (2019). On plain error review, the defendant bears the burden of showing that (1) error occurred, (2) the error was clear or obvious, and (3) the error affected the outcome of the lower court proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To the extent an evidentiary issue involves preliminary questions of law, this Court reviews questions of law de novo. *People v Dobek*, 274 Mich App 58, 85; 732 NW2d 546 (2007).

"Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *Id*. at 82. "Jury instructions are reviewed in their entirety to determine if error requiring reversal occurred." *People v McKinney*, 258 Mich App 157, 162; 670 NW2d 254

(2003). Unpreserved claims of instructional error, however, are reviewed for plain error. *Carines*, 460 Mich at 764-765; *Aldrich*, 246 Mich App at 124-125.

## B. ANALYSIS

Based on the nature of defendant's arguments, it is necessary to first address his second contention that the evidence that he was hiding within a wall in a closet when law enforcement arrived at his residence to arrest him did not constitute "flight" evidence on which to justify giving the jury instruction regarding "flight."

"Evidence that reflects a defendant's consciousness of guilt is relevant," *People v Parrott*, 335 Mich App 648, 680; 968 NW2d 548 (2021), and "[e]vidence of flight is admissible to support an inference of 'consciousness of guilt,'" *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008) (citation and some quotation marks omitted). "The term 'flight' has been applied to such actions as fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody." *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). " 'Evidence of an attempt to avoid arrest . . . in a criminal case is relevant, material, admissible, and can lead to an inference of guilt.' " *Parrott*, 335 Mich App at 680, quoting *People v Biegajski*, 122 Mich App 215, 220; 332 NW2d 413 (1982) (ellipsis in original).

To admit flight evidence, it is not necessary for the prosecutor to prove that the defendant "was 'motivated' by fear of apprehension" because it is difficult to prove a person's motives and such a requirement would thus make flight evidence rarely admissible. *People v Smelley*, 485 Mich 1023; 776 NW2d 310 (2010). "It is ultimately for the jury to determine whether a defendant's conduct was indicative of consciousness of guilt." *Parrott*, 335 Mich App at 680.

Here, the record evidence reflects that defendant was hiding in a cut out portion of the wall inside a closet when law enforcement arrived at his home with an arrest warrant for the CSC charges. There was also evidence that defendant made this hiding place and, despite defendant's assertions to the contrary, that it was specifically designed to hide a person. A rational juror could conclude from this evidence that defendant was hiding from the police and attempting to evade arrest for the CSC charges, which in turn could support an inference of consciousness of guilt. *Parrott*, 335 Mich App at 680; *Unger*, 278 Mich App at 226. Contrary to defendant's assertion, the prosecutor was not required to show that defendant was motivated by a fear of apprehension. *Smelley*, 485 Mich at 1023.

This Court has previously reached the same conclusion under similar factual circumstances. In *Biegajski*, 122 Mich App at 219-220, this Court held that evidence that the defendant was hiding in the basement when police officers arrived at the defendant's residence to arrest him, and that the defendant then lied to the officers about his identity, was admissible as evidence of an attempt to avoid arrest. Defendant in the present case has thus failed to establish plain error based on the admission of the evidence he was hiding when law enforcement arrived at his residence to effectuate the arrest. *Carines*, 460 Mich at 763.

Next, defendant argues that the trial court erred by giving the jury instruction on "flight." Consistent with M Crim JI 4.4, the trial court instructed the jury in relevant part as follows:

There has been some evidence that the defendant tried to hide or hid after the alleged crime. This evidence does not prove guilt. A person may run or hide for innocent reasons such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true, and if true, whether it shows that the defendant had a guilty state of mind.

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014) (quotation marks and citation omitted). "Jury instructions must include all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence." *Dobek*, 274 Mich App at 82. "The trial court may issue an instruction to the jury if a rational view of the evidence supports the instruction." *Armstrong*, 305 Mich App at 240.

In this case, the record reflects that defendant concealed himself from law enforcement in a compartment he constructed within a closet in his residence, specifically designed to harbor a person. The evidence demonstrates that defendant's actions were undertaken with the intent to evade arrest. Accordingly, the trial court's instruction was amply supported by a rational interpretation of the evidence. See, *Id*. Defendant, therefore, has not established plain error with respect to the jury instruction issued by the trial court. *Carines*, 460 Mich at 763.

## III. SEXUAL HISTORY OF COMPLAINANT

Defendant next argues that it was plainly erroneous to have allowed the prosecutor (1) to question the complainant about when she lost her virginity, (2) to elicit testimony from the complainant that she lost her virginity to defendant, and (3) to reference those facts multiple times during closing arguments. Defendant raises both an evidentiary issue and what appears to be a claim of prosecutorial misconduct.

### A. TRIAL TESTIMONY

As relevant to this issue, defendant's trial counsel questioned the complainant on cross-examination as follows:

> *Q*. Okay. So, when this[2] was happening, did you see Mr. Clendenin's penis?
>
> *A*. Yeah.
>
> *Q*. Did he have his clothes on? Did he have his clothes off?
>
> *A*. He had his shirt on.

---

[2] The immediately preceding questioning was focused on the incident that occurred in the basement.

*Q.* Shirt on and that was all?

*A.* Yeah.

*Q.* Okay. Did you see -- and you said you saw his penis?

*A.* Mmhmm.

*Q.* Correct? Had he been circumcised?

*A.* Yes.

*Q.* Okay and how do you know that?

*A.* Cause I seen his dick. I don't know.

*Q.* Okay. Okay and when you saw his dick did you see the rest of the front of him?

*A.* He had his shirt on.

*Q.* Okay but he -- but he didn't have pants on, correct?

*A.* Right.

*Q.* Okay, did you notice any scars or marks?

*A.* No, I didn't pay attention.

*Q.* You didn't pay attention.

*A.* Not really, no.

*Q.* Okay. But you didn't notice anything?

*A.* Right.

*Q.* And the second time you had sex? Do you remember?

*A.* Ma'am I was thirteen.

*Q.* Do you remember?

*A.* No.

*Q.* Okay. Do you remember the third time you had sex?

*A.* (No verbal answer).

*Q.* You don't, do you?

*A.* (No verbal response, shaking head no).

*Q.* Or the fourth time?

*A.* No.

Defense counsel further questioned the complainant:

*Q.* Just one quick question. You said when you were in the barn that Mr. Clendenin showed you his penis, correct?

*A.* Mmhmm.

*Q.* When he did that did you see any scars or marks --

*A.* No.

*Q.* In that area?

*A.* I didn't pay attention, no.

Subsequently, on redirect-examination, the prosecutor questioned the complainant in relevant part as follows:

*Q.* Now had -- who -- when did you lose your virginity?

*A.* Um somewhere in 2020.

*Q.* And who did you lose your virginity to?

*A.* Him.

*Q.* Him being Shane Clendenin?

*A.* Yes.

*Q.* And you again were thirteen?

*A.* Yes.

Defendant testified that he had a combination of scars and stretch marks around his groin area from issues related to a hernia that occurred 18 years earlier. Defendant explained:

Eighteen years ago I had a bad hernia and it kept ripping and going farther down towards my testicles and everything swelled up like I had um elephantiasis where they had to go in and remove some material and put some mesh in and sew me back up, but that's – that's generally what it's from.

Defendant also submitted photographs taken by investigator Michael Kalbfleisch that showed defendant's scars near his groin area. Kalbfleisch testified that defendant "has scars down on both legs near his groin area and they were very pronounced, very puffy and very red looking." He further testified: "You – you can't miss them. When I saw them, I was like wow, I was kind of like set back at first how puffy and just scarred up they were." Kalbfleisch indicated that the scarring was more apparent in person than it appeared in the photographs because of the lighting in the room where he took the photographs. Defendant's girlfriend also testified that defendant had scars and stretch marks around his groin area that were noticeable "[i]f you were looking at it."

## B. EVIDENTIARY ISSUE

Defendant contends that it was plainly erroneous for the prosecutor to (1) question the complainant about when she lost her virginity and (2) elicit testimony from the complainant that she lost her virginity to defendant because this evidence was inadmissible for multiple reasons.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *Aldrich*, 246 Mich App at 113. Here, as defendant concedes, there was no objection to the challenged testimony. This evidentiary argument is therefore unpreserved. *Id.* Unpreserved evidentiary issues are reviewed for plain error affecting the defendant's substantial rights. *Brown*, 326 Mich App at 195.

Turning first to defendant's argument that the evidence was inadmissible under the rape-shield statute, MCL 750.520j provides as follows:

> (1) Evidence of specific instances of the complainant's sexual conduct, opinion evidence of the complainant's sexual conduct, and reputation evidence of the complainant's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a) Evidence of the complainant's past sexual conduct with the actor.
>
> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.
>
> (2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).

In *People v Sharpe*, 502 Mich 313, 327; 918 NW2d 504 (2018), our Supreme Court explained:

> The rape-shield statute generally prohibits the admission of "[(1)] [e]vidence of specific instances of the complainant's sexual conduct, [(2)] opinion evidence of the complainant's sexual conduct, and [(3)] reputation evidence of the complainant's sexual conduct . . . ." MCL 750.520j(1). Although the statute was enacted in response to the practice of impeaching the complainant's testimony with evidence of the complainant's sexual conduct, the plain language of the statute does not limit the exclusion of such evidence upon whether the evidence is offered by the prosecutor or by the defendant. [Alterations and ellipsis in original.]

The present case does not involve opinion or reputation evidence of the complainant's sexual conduct. Regarding evidence of specific instances of a complainant's sexual conduct, the *Sharpe* Court held in relevant part that "a specific instance of the complainant's sexual conduct must relate to a particular occurrence of the complainant's sexual conduct." *Id*. at 328. Thus, the Court concluded that evidence of a complainant's lack of other sexual partners or other sexual intercourse did not fall within the scope of the rape-shield statute because such evidence "demonstrates an absence of conduct, not a 'specific instance' of sexual conduct." *Id*. at 330. The *Sharpe* Court further reasoned:

> [T]his conclusion is consistent with the purposes of the rape-shield statute. The rape-shield statute was designed to prevent unwelcome and unnecessary inquiry into a complainant's sexual activities, thereby protecting the complainant's privacy and protecting the complainant from suffering unfair prejudice based on her sexual history. . . . There is no indication from our Legislature or in our caselaw that the rape-shield statute was designed to prevent a complainant's disclosure of her own sexual history or its attendant consequences. [*Id*. at 330-331.]

Here, the challenged testimony from the complainant also relates to an "absence of conduct" rather than a specific instance of sexual conduct. The evidence therefore does not fall within the scope of the rape-shield statute, and defendant has failed to demonstrate that admission of the evidence was plainly erroneous. *Id*. at 330.

Defendant also argues that the challenged evidence was inadmissible because it was irrelevant.

At the time of defendant's trial, MRE 402[3] provided that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court," and "[e]vidence which is not relevant is not admissible." As MRE 401 existed at the time of trial, "relevant evidence" was defined to mean "evidence having any tendency to make the existence of

---

[3] MRE 402 was recently amended, effective January 1, 2024, although the changes appear to be stylistic without any change in substantive meaning.

any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.[4]

Here, the evidence pertaining to the complainant's virginity, was introduced by the prosecution during redirect examination. This line of questioning was in direct response to defense counsel's inquiries on cross-examination regarding whether the complainant observed any distinguishing scars or marks on defendant's penis. Defense counsel's cross-examination, coupled with the subsequent introduction of evidence concerning the defendant's groin-area scars and marks, made it evident that the defense's strategy was to suggest that the charged conduct could not have occurred as described by the complainant, as she would necessarily have observed these physical characteristics had the alleged acts transpired as she claimed.

The importance of this factual issue was clearly apparent during closing arguments. The prosecutor argued in pertinent part:

> Defense would like you to think that this thirteen-year-old is going to be focusing on the stretch marks while she is having sex with a thirty-six-year-old man. As a matter of fact, this was the time that she had her virginity taken. So, to suggest that she was going to be focused on stretch marks I think is ludicrous.

Defendant's trial counsel argued in pertinent part during closing arguments:

> The photographs that were presented, Mr. Clendenin tried to be up front and honest with you. He is very open with you talking about the photographs. He had the surgery eighteen years ago, so whatever the scars are, whatever you decide is correct, the scars and the stretch marks were there in 2020. And, we heard [defendant's girlfriend] say they were very noticeable, but [the complainant] never noticed them. I don't think that should simply be excused if she really had sex as many times as she said that she did, it can't be excused as all thirteen-year-old[s] wouldn't notice something like that? You can decide what you think.

Finally, in rebuttal, the prosecutor argued:

> The defense wants you to focus on these stretch marks and how they would be absolutely noticeable. Well again ladies and gentlemen, the closest her face got to his penis was when it was in her mouth as she is giving him oral sex in a barn. So, if the lighting wasn't great when the photos were taken, I would submit to you that maybe the lighting isn't as great in the barn either. When he is shoving his penis in her mouth that maybe she's not focusing on the inside of his thighs.

The prosecution introduced evidence concerning the complainant's lack of prior sexual experience to rebut defendant's argument that the alleged offenses could not have occurred

_____

[4] MRE 401 was also amended effective January 1, 2024.

because the complainant purportedly would have observed certain marks and scars in defendant's groin area. Evidence of the complainant's virginity rendered it more probable that there existed plausible explanations for why the complainant may not have made observations that another person, under different circumstances, might have noticed. These factual issues were material, as they directly implicated the central question—whether the defendant perpetrated the charged sexual acts against the complainant. Furthermore, a fact is considered material if it is 'in issue'—that is, within the scope of contested matters—regardless of whether it constitutes an element of a crime, cause of action, or defense. See *People v Mills*, 450 Mich 61, 68; 537 NW2d 909, modified on other grounds 450 Mich 1212 (1995).

These issues became matters in controversy due to defendant's efforts to impugn the complainant's credibility, specifically by suggesting that she would have noticed defendant's scars and stretch marks had the events occurred as described, thereby casting doubt on the veracity of her testimony. As our Supreme Court has observed, the truthfulness and accuracy of a witness's testimony is inherently relevant, as it bears directly on the probability of a consequential fact. *Id*. at 72. Thus, the complainant's account of the alleged sexual acts, and her credibility regarding those assertions, were highly material to the proceedings. The prosecution's introduction of the complainant's virginity was a direct response to the challenge to her credibility.

It is well-established that any reference to a complainant's credibility in conjunction with the complainant's sexual history—whether such history evidences sexual activity or abstention—must be undertaken with significant caution. This Court has held that evidence of a complainant's other sexual activity is inadmissible to establish consent or for the purpose of impeaching the complainant's credibility, as such history bears no logical nexus to the complainant's propensity for truthfulness. *People v Stull*, 127 Mich App 14, 18; 338 NW2d 403 (1983).

This Court has further held that evidence of a complainant's virginity is inadmissible under former MRE 404(a)(3) [5] when offered to prove that the complainant did not consent to the charged sexual acts based on the theory that the complainant was acting in conformity with prior sexual inexperience. *People v Bone*, 230 Mich App 699, 702, 703; 584 NW2d 760 (1998). Nevertheless, the Court in *Bone* clarified that evidence introduced for another relevant, proper purpose does not become inadmissible solely because it also demonstrates the complainant's virginity. *Id*. at 702 n 3. Our Supreme Court has similarly reasoned that evidence admissible for one purpose does not become inadmissible merely because it would be precluded for another purpose. *People v VanderVliet*, 444 Mich 52, 73; 508 NW2d 114 (1993), amended on other grounds 445 Mich 1205 (1994).

In this matter, the prosecution's introduction of the complainant's virginity was not intended to suggest that the complainant was, in general, more credible or more likely to testify

---

[5] This provision is now contained in MRE 404(a)(2)(C). The current and former provision both provided an exception to the general prohibition on character evidence used to show action in conformity with a character or trait, allowing evidence in a criminal sexual conduct case of an alleged victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

truthfully, as there exists no logical relationship between sexual history and veracity. Instead, the evidence was admitted to elucidate factual issues concerning the complainant's ability to observe or not observe certain physical characteristics during the alleged incidents, and to provide context for her observations. That the evidence incidentally referenced the complainant's lack of sexual experience does not, by itself, render it inadmissible. See i*d*.; *Bone*, 230 Mich App at 702 n 3.

Accordingly, defendant has failed to demonstrate that the admission of this evidence amounted to plain error predicated on a lack of relevance in the specific context of this case. MRE 401; MRE 402; *Carines*, 460 Mich at 763.

Defendant further contends that, assuming arguendo the evidence was relevant, it was nonetheless inadmissible under MRE 403. At the time of trial, MRE 403[6] provided: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Defendant asserts that the evidence was inflammatory and unduly prejudicial. However, the evidence at issue does not appear to be any more inflammatory or prejudicial than the central allegation itself—that the defendant, an adult, engaged in sexual acts with a thirteen-year-old child, which forms the basis of the charged offenses. As our Supreme Court has explained:

> All evidence offered by the parties is "prejudicial" to some extent, but the fear of prejudice does not generally render the evidence inadmissible. It is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded.
>
>> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403 . . . . Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect . . . . It is not designed to permit the court to "even out" the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none.
>
> Similarly, the Court has also stated:
>
>> "Unfair prejudice" does not mean "damaging." Any relevant testimony will be damaging to some extent. We believe that the notion of "unfair prejudice" encompasses two concepts. First, the idea of prejudice denotes a situation in which there exists a danger that marginally probative evidence will be given undue or pre-

---

[6] MRE 403 was also amended effective January 1, 2024, to make stylistic changes.

emptive weight by the jury. In other words, where a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect, a situation arises in which the danger of "prejudice" exists. Second, the idea of unfairness embodies the further proposition that it would be inequitable to allow the proponent of the evidence to use it. Where a substantial danger of prejudice exists from the admission of particular evidence, unfairness will usually, but not invariably, exist. Unfairness might not exist where, for instance, the critical evidence supporting a party's position on a key issue raises the danger of prejudice within the meaning of MRE 403 as we have defined this term but the proponent of this evidence has no less prejudicial means by which the substance of this evidence can be admitted. [*Mills*, 450 Mich at 75-76 (ellipses in original; some citations omitted.]

In the present matter, the admission of evidence concerning the complainant's virginity cannot be characterized as having been introduced solely for its prejudicial or inflammatory effect. Rather, as previously analyzed in detail, such evidence was adduced in rebuttal to the defense's strategy of undermining the complainant's credibility by implication—specifically, by contending that, had the complainant's testimony been truthful, she would necessarily have observed the defendant's scars. Furthermore, contrary to defendant's position on appeal, evidence of an individual's virginity or lack thereof is not, in contemporary society, so inherently prejudicial as to preclude rational jurors from impartially assessing the evidence. Cf. *Sharpe*, 502 Mich at 333 ("We agree with the Court of Appeals that abortion evidence, while perhaps incendiary to some, is not so inherently prejudicial in today's society as to render it inadmissible."). Defendant has failed to establish that the probative value of this evidence was substantially outweighed by any danger of unfair prejudice and thus has not demonstrated plain error on this issue. MRE 403; *Carines*, 460 Mich at 763.

## C. PROSECUTORIAL MISCONDUCT

Turning next to defendant's apparent claims of prosecutorial misconduct, defendant contends that the prosecutor committed misconduct during closing arguments by appealing to the jurors' sympathies during three references to the complainant's loss of virginity. Defendant relies on the following portions of the prosecutor's closing argument:

Defense would like you to think that this thirteen-year-old is going to be focusing on the stretch marks while she is having sex with a thirty-six-year-old man. *As a matter of fact, this was the time that she had her virginity taken.* So, to suggest that she was going to be focused on stretch marks I think is ludicrous. [Emphasis added.]

She falls in love with him, as you know, young girls might do, and wishes that he would fall in love with her back. But instead, he takes her to dark places to have sex with her, a basement. *She lost her virginity in a dusty basement on a futon or a mattress to a thirty-six-year-old man.* So, no surprise that [complainant] says she seemed a little odd when she came back up the stairs, or when she came back and

-14-

she saw her, and she was kind of hesitant and standoffish, that makes sense to me. *She just lost her virginity in your basement*. [Emphasis added.]

Claims of prosecutorial misconduct are preserved by making contemporaneous and specific objections to the challenged conduct in the trial court. *Unger*, 278 Mich App at 234-235. Here, defendant also concedes that there were no objections to the challenged prosecutorial statements. This argument is therefore also unpreserved. *Id*. Unpreserved claims of prosecutorial misconduct are also reviewed for plain error. *Id*. at 235.

Claims of prosecutorial misconduct are generally "decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Dobek*, 274 Mich App at 64. The test is "whether a defendant was denied a fair and impartial trial." *Id*. at 63. "A prosecutor may not appeal to the jury to sympathize with the complainant." *Unger*, 278 Mich App at 237. However, a "prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Dobek*, 274 Mich App at 64.

As previously discussed, the evidence pertaining to the complainant's virginity was properly admitted. The prosecutor's remarks remained within the scope of the permissible purposes for which the evidence was introduced. Prosecutors are entitled to argue the evidence and all reasonable inferences therefrom as they relate to their theory of the case. *Dobek*, 274 Mich App at 66. Furthermore, the prosecution is afforded broad latitude in arguing the facts and reasonable inferences and is not required to confine its argument to the most neutral terms. *Id*. Accordingly, defendant has failed to establish on appeal that the prosecutor's statements were improper. *Carines*, 460 Mich at 763.

Even assuming, arguendo, that the prosecutor's statements were improper or prejudicial, any potential prejudicial effect could have been mitigated by a timely objection and a curative instruction. This Court has held that reversal is unwarranted where a curative instruction could have remedied any alleged prejudice, and curative instructions are generally sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements. *Unger*, 278 Mich App at 235 (quotation marks and citation omitted).

### D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues in the alternative that his trial counsel was ineffective by failing to object to the testimony and closing argument regarding the complainant's virginity. When there has not been an evidentiary hearing on a claim of ineffective assistance of counsel, as is the case here, this Court's appellate review is "limited to the existing record." *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). "A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *Unger*, 278 Mich App at 242. Factual findings are reviewed for clear error and questions of constitutional law are reviewed de novo. *Id*.

"A defendant that claims he has been denied the effective assistance of counsel must establish (1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *Sabin*, 242 Mich App at 659. Based on the analysis above, defendant in this case has not demonstrated that any of the challenged testimony or prosecutorial argument was inadmissible or

improper. It is well-settled that trial counsel is "not ineffective for failing to make a futile objection." *Unger*, 278 Mich App at 256.

## IV. VOUCHING

Next, defendant argues that two prosecution witnesses impermissibly vouched for the complainant's credibility and that plain error occurred. Defendant challenges testimony given by Sharon Van Dam, a detective with the Van Buren County Sheriff's Office, who forensically interviewed the complainant. Defendant also challenges testimony given by Dr. Sarah Brown, a child abuse pediatrician, who testified as an expert in child sexual assault dynamics.

Defendant concedes that there was no objection to the challenged testimony. These evidentiary arguments are therefore unpreserved. *Aldrich*, 246 Mich App at 113. Unpreserved evidentiary issues are reviewed for plain error affecting the defendant's substantial rights. *Brown*, 326 Mich App at 195.

Defendant first argues that the following testimony by Detective Van Dam on direct examination by the prosecutor violated MRE 701 and improperly vouched for the complainant's credibility:

> *Q.* And can you describe [the complainant's] demeanor during the forensic interview?
>
> *A.* She was -- I think she was standoffish with me at first and she was embarrassed, embarrassed that something like this happened. She didn't want anyone to get in trouble, but she needed to tell what happened to her.

Defendant also relies on the following testimony that Van Dam gave during cross-examination by defendant's trial counsel:

> *Q.* Okay. And the only where I'm going with the question is you indicated her demeanor on the day of the interview, but did you know her before that? Do you know if she was acting differently than she normally would?
>
> *A.* No, I -- I -- I have a good read on children and -- and she was ashamed. She was ashamed that –
>
> *Q.* Okay if you would just answer my question. If you did not know her prior to that you can't testify as to whether her demeanor was different than it would normally be. Correct?
>
> *A.* That is correct.

On redirect, the prosecutor questioned Van Dam as follows:

> *Q.* You can testify if there was a change in the demeanor. So, if she was at one point displaying casual, calm, behaviors, and that at some point changes, what was her demeanor like during the interview?

*A*. She at times would cry and like I said, she was not hesitant to tell me but just -- it was slow moving to tell me what she knew.

At the time of trial, MRE 701[7] provided that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

Here, Van Dam's testimony that the complainant appeared embarrassed and ashamed were based on her perceptions of the complainant during the interview, which is permissible lay testimony under MRE 701. *Brown*, 326 Mich App at 197. It is also unclear how these observations necessarily constitute "vouching" since a person can be embarrassed or ashamed for any number of reasons. Defendant has failed to demonstrate that the admission of this testimony was plainly erroneous. *Carines*, 460 Mich at 763.

Next, defendant argues that Dr. Brown improperly vouched for the complainant's credibility by essentially stating that it was rare for children to lie about sexual abuse, that unfounded reports of child sexual abuse were due to misunderstandings, and that unfounded concerns are not common for an event that happened in the past.

In support of this argument, defendant relies on the following testimony by Dr. Brown given during cross-examination by defendant's trial counsel:

*Q*. Okay, you've talked about behaviors that you expect to see with children who have been sexually abused. What behaviors do you see when a child who is lying about being sexually abused? From your experience.

*A*. In my experience cases where there's maybe we would say unfounded concern about sexual abuse, the concern for sexual abuse is not true, it's not typically because the child has simply fabricated abuse. Cases where it's confusing are often when a child says something that's taken in the wrong way and then lots of questions get asked and the situation becomes very confusing. Sometimes an adult is very worried that a child has been abused and asks leading questions of the child to which the child answers in kind of a non-descript way and the adult becomes more and more concerned that the child's answers do in fact mean that the child has been abused. So, I would say again, in light [sic] sexual abuse there's no one common pattern of exactly what happened when there's an unfounded concern about sexual abuse.

\* \* \*

---

[7] MRE 701 was also amended effective January 1, 2024, to make stylistic changes.

*Q.* When there's a waiting to tell you indicated that sometimes it's because the kids are afraid, ashamed, there's a variety of reasons that they would wait. Might part of that be that they, that it simply didn't happen, and they get forced into it as you've testified already that parents or adults sometimes are leading children.

*A.* In my experience unfounded concerns are not as common for something that happened way in the past. Unfounded concerns are usually more centered upon something recent that has sparked the concern.

"It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury," and an "expert may not vouch for the veracity of a complainant." *Dobek*, 274 Mich App at 71. Specifically, regarding cases involving allegations of child sexual abuse, our Supreme Court has held that "expert witnesses may not testify that children overwhelmingly do not lie when reporting sexual abuse because such testimony improperly vouches for the complainant's veracity." *People v Thorpe*, 504 Mich 230, 235; 934 NW2d 693 (2019).

In *Thorpe*, our Supreme Court reversed and remanded for a new trial based on testimony from the prosecution's expert on child sexual abuse and disclosure to the effect that children lie about sexual abuse in about 2% to 4% of the cases his organization handled. *Id*. at 239-240. The testimony was admitted over objection by the defense. *Id*. The Supreme Court concluded that the expert had improperly vouched for the credibility of the complainant by testifying that only 2% to 4% of children lie about sexual abuse and further identifying two specific scenarios when children might lie, neither of which was applicable to the factual circumstances of the case. *Id*. at 259. Furthermore, the Court determined that the erroneous admission of this evidence was not harmless, considering that the prosecution emphasized the improper vouching testimony during closing rebuttal argument and that the outcome of the trial turned on the jury's assessment of the complainant's credibility. *Id*. at 259-260.

In *People v Sattler-VanWagoner*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362433); slip op at 1, the defendant was convicted for sexually assaulting his nine-year-old daughter. At trial, the prosecution's expert had testified that "false reporting is 'statistically very rare in these types of cases.' " *Id*. at ___; slip op at 2. This Court held that the expert's testimony constituted plain error because it was essentially the same statistical vouching testimony prohibited under *Thorpe*. *Id*. at ___; slip op at 3-4, 6. However, this Court nonetheless concluded that the defendant had not demonstrated outcome determinative prejudice, and affirmed the defendant's conviction, because the improper vouching testimony was made during a single, isolated comment and there was substantial other evidence of the defendant's guilt. *Id*. at ___; slip op at 4, 6-7.

This Court in *Sattler-VanWagoner* summarized the rules applicable to an expert's testimony in this context as follows:

But our Supreme Court has held that when a defendant attacks the credibility of the complainant, a qualified expert may offer testimony to explain the typical behavior of complainants of child sex abuse. See *People v Peterson*, 450 Mich 349, 352, 373; 537 NW2d 857 (1995). In child sex abuse cases, an expert may also testify regarding the typical symptoms of child sexual abuse in order to explain a

-18-

complainant's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse complainant or to rebut a credibility attack. *Thorpe*, 504 Mich at 258. Still, an expert may not vouch for the credibility of the complainant. *Peterson*, 450 Mich at 373. Commenting on the numerical odds or a statistical assessment of a witness telling the truth or lying about sexual assault allegations amounts to vouching. See *id.*; *Thorpe*, 504 Mich at 258-259. [*Sattler-VanWagoner*, ___ Mich App at ___; slip op at 5.]

In the present matter, Dr. Brown opined, based on her professional experience, that unfounded allegations of sexual abuse generally stemmed from misunderstandings rather than deliberate fabrication by the child. Dr. Brown further stated that, in her experience, unfounded concerns regarding historical child sexual abuse were comparatively rare. Even assuming, without deciding, that these assertions equated to a claim that false reports are statistically infrequent, Dr. Brown's testimony constituted plain error. *Id.* at ___; slip op at 3-4, 6.

However, as to the prejudice prong, the statements at issue were isolated, were not elicited by the prosecution, and were non-responsive to defense counsel's cross-examination, which sought information regarding child behaviors rather than Dr. Brown's statistical opinions on the veracity of child sexual abuse reports.

Furthermore, during closing argument, defense counsel leveraged Dr. Brown's responses to demonstrate her alleged partiality towards the prosecution, thereby seeking to undermine her credibility before the jury. In pertinent part, defense counsel argued as follows:

> Yeah, I thought Dr. Brown's testimony was interesting. Clearly Dr. Brown testifies for the prosecutor. Dr. Brown is an advocate for children and is very much biased in that direction. She didn't even confirm that children lie really, she just said sometimes there's a misunderstanding and they try to explain things to people when they don't understand. Dr. Brown is biased. You will receive a jury instruction that explains how to make use of an expert testimony. But I believe that the evidence supports the fact that [the complainant] possibly had a crush on Mr. Clendenin, he didn't know it, and [the complainant] acted on it in her mind. That's for you to decide. If you think she did something or she is making this up. She certainly got a lot of attention, didn't she?

By contrast, the prosecution did not reference the challenged statements during closing argument, instead relying on other aspects of Dr. Brown's testimony that defendant does not allege constituted improper vouching. Unlike the facts in *Thorpe*, the vouching testimony at issue here was neither elicited nor relied upon by the prosecution to secure a conviction. Defense counsel was able to utilize Dr. Brown's unsolicited testimony to the defense's strategic advantage. Thus, defendant has failed to establish that, but for Dr. Brown's impermissible testimony, the outcome of the trial would have been different. Absent outcome-determinative prejudice, plain error warranting reversal has not been shown. *Carines*, 460 Mich at 763.

Defendant further contends, in the alternative, that trial counsel's failure to object to the alleged vouching testimony amounted to ineffective assistance of counsel. As previously discussed, Van Dam's testimony was admissible, and counsel cannot be deemed ineffective for

-19-

failing to make a futile objection. *Unger*, 278 Mich App at 256. Regarding Dr. Brown's testimony, defense counsel capitalized on the non-responsive and potentially prejudicial testimony by highlighting Dr. Brown's apparent bias, thereby seeking to undermine her credibility. This constituted a strategic decision, and appellate courts generally refrain from second-guessing matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Defendant has failed to present evidence sufficient to overcome the strong presumption that counsel's performance was the product of sound strategy, *Unger*, 278 Mich App at 243, and has not demonstrated the denial of effective assistance of counsel.

## V. CUMULATIVE ERROR

Defendant also argues that reversal is required based on cumulative error.

"[T]he cumulative effect of several minor errors may warrant reversal where the individual errors would not." *Unger*, 278 Mich App at 261 (quotation marks and citation omitted). "[I]n order to reverse on the basis of cumulative error, the effect of the errors must [be] seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *Id.* (quotation marks and citation omitted; second alteration in original). "[T]he cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Dobek*, 274 Mich App at 106.

As detailed above, defendant has not established the existence of any reversible errors at trial. Even assuming, arguendo, that Dr. Brown's statements constituted improper vouching, defendant has failed to show resulting prejudice. Accordingly, defendant has not demonstrated entitlement to appellate relief on the basis of cumulative error, as he has not identified any seriously prejudicial errors undermining confidence in the verdict's reliability. *Id.*; *Unger*, 278 Mich App at 261.

## VI. STANDARD 4 ISSUES

Defendant has also submitted a Standard 4 brief raising additional issues.

Defendant challenges the admissibility of Dr. Brown's expert testimony on multiple grounds. Defendant concedes that this issue is unpreserved and that our review is for plain error. *Brown*, 326 Mich App at 195.

First, defendant appears to argue that Dr. Brown's expert testimony was inadmissible because the complainant's "behavior was inconsistent with that of a typical complainant of child sexual abuse," and there were no medical findings or physical evidence of sexual abuse. However, defendant does not acknowledge that "[i]n child sex abuse cases, an expert may also testify regarding the typical symptoms of child sexual abuse in order to explain a complainant's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse complainant or to rebut a credibility attack." *Sattler-VanWagoner*, ___ Mich App at ___ ; slip op at 5. Defendant does not explain how Dr. Brown's testimony was inadmissible under this rule and therefore has failed to demonstrate plain error. *Carines*, 460 Mich at 763.

Defendant also asserts that Dr. Brown impermissibly vouched for the complainant's credibility because there was no evidence of medical or physical findings consistent with sexual

assault. Defendant appears to rely on *People v Smith*, 425 Mich 98, 101; 387 NW2d 814 (1986), in which our Supreme Court addressed the question "whether the trial courts erred so as to require reversal in allowing the examining physicians to testify that the complainants had been sexually assaulted."

As the Supreme Court subsequently explained in *Thorpe*, the Court in *Smith* held that "an examining physician cannot give an opinion on whether a complainant had been sexually assaulted if the 'conclusion [is] nothing more than the doctor's opinion that the complainant had told the truth,' " *Thorpe*, 504 Mich at 255, quoting *Smith*, 425 Mich at 109 (alteration in original), but "an examining physician, if qualified by experience and training relative to treatment of sexual assault complainants, can opine with respect to whether a complainant had been sexually assaulted when the opinion is based on physical findings *and* the complainant's medical history," *Thorpe*, 504 Mich at 255, citing *Smith*, 425 Mich at 110-112. "*Smith* only addressed the expert testimony of the examining physician . . . ." *Thorpe*, 504 Mich at 255.

Here, Dr. Brown was not the examining physician. She testified that she had not provided medical care to anyone in this case and had no knowledge of the facts of this case. *Smith* is thus inapplicable, and defendant has failed to establish plain error requiring reversal. *Carines*, 460 Mich at 763.

Finally, defendant argues that he was denied the effective assistance of counsel because his trial counsel failed to call a key defense witness, failed to object to the testimony and closing argument regarding the complainant's virginity, failed to object to Van Dam's improper vouching testimony, failed to object to Dr. Brown's improper vouching testimony, and failed to object to Dr. Brown's testimony that was inadmissible for lack of proper foundation.

Because there has not been an evidentiary hearing, this Court's appellate review is "limited to the existing record." *Snider*, 239 Mich App at 423. As previously stated, a "defendant that claims he has been denied the effective assistance of counsel must establish (1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *Sabin*, 242 Mich App at 659.

Three of defendant's standard 4 claims of ineffective assistance of counsel have already been resolved in the context of the arguments advanced through appellate counsel. As discussed above, defendant has not shown that he received ineffective assistance of counsel based on a failure to object to the testimony and closing argument regarding the complainant's virginity, Van Dam's allegedly improper vouching testimony, or Dr. Brown's allegedly improper vouching testimony.

Turning to defendant's additional arguments, he first contends that his trial counsel was ineffective for failing to call Kayne Clendenin as a witness at trial. Defendant argues that remand for an evidentiary hearing is necessary to determine whether this failure was the result of strategic decision by his trial counsel. As an offer of proof, defendant has attached a handwritten note that is labeled as an "affidavit" and was purportedly written by Kayne. The handwritten note is not notarized or dated, and it essentially states that Kayne would have testified that defendant was never alone with the complainant.

Trial counsel's decisions regarding the presentation of evidence and the calling of witnesses are presumed to be matters of trial strategy, and this Court does not substitute its judgment for trial counsel's strategic decisions. *People v Bass*, 317 Mich App 241, 278; 893 NW2d 140 (2016). Defendant cannot overcome this presumption merely by asserting that defense counsel may not have actually had a strategic reason for not calling Kayne. There is no evidence to overcome the presumption that trial counsel made a strategic decision, and defendant therefore is not entitled to relief on this claim. *Id*. at 279. This Court has already denied defendant's motion to remand, and defendant has not demonstrated that a factual record must be developed to determine whether his trial counsel was ineffective, and there accordingly is no reason for this Court to now remand the matter for an evidentiary hearing. *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

Next, defendant argues that his trial counsel was ineffective for failing to object to certain testimony given by Dr. Brown. However, defendant has not demonstrated that any of Dr. Brown's testimony was inadmissible. Counsel is "not ineffective for failing to make a futile objection." *Unger*, 278 Mich App at 256. Defendant thus has not demonstrated that relief is warranted.

Affirmed.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick